## Lee McMichael v. The State.

No. 3450.   Decided February 28, 1906.

### 1.—Manslaughter—Husband and Wife—Res Gestae—Bill of Exceptions.

Where upon trial for murder, the State was permitted to show that defendant's wife had married subsequent to the homicide, and had made the statement to the State witnesses on the night of the homicide and directly thereafter that the deceased had shot himself, and when they asked her where the pistol was, she stated she had thrown it in the yard; and the explanation of the court to the defendant's bill of exceptions stated that this testimony was admitted as res gestæ, and the bill itself failed to show whether or not it was res gestæ, there was no error.

### 2.—Same—Cross-Examination—Germane Testimony.

Upon a trial for murder, there was no error in permitting the State's attorney

on cross-examination to ask the wife of defendant, by whom she was placed on the witness stand, questions germane to her examination in chief.

**3.—Same—Argument of Counsel—Husband and Wife—Failure to Examine Wife.**

Where upon trial ·for murder, the defendant had failed to put his wife upon the witness stand, and the testimony showed that she was an eye-witness to the homicide, there was no error in permitting the district attorney to allude to the failure of defendant to examine his wife as a witness, and state that this showed that defendant was afraid to trust her testimony and had fabricated evidence in his testimony as to how the difficulty occurred.

**4.—Same—Charge of Court—Manslaughter—Self-Defense—Apparent Danger.**

Where upon trial for murder, the defendant testified directly to the fact that deceased had a deadly weapon, to wit a drawn pistol, and had it in his hand at the time of the homicide declaring that he intended to kill defendant, and the State's testimony controverted this point; the court should have charged on the use of a deadly weapon by deceased, and the· presumptions flowing therefrom; and this, although deceased in fact may not have had a pistol but defendant nevertheless believed he did.

Appeal from the District Court of Rusk. Tried below before the Hon. Richard B. Levy.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Turner & Turner* and *S. J. Hardwick,* for appellant.—On question of res gestæ: Ray v. State, 3 Texas Ct. Rep., 166; Humphrey v. State, 11 id., 484; Moore v. State, 8 id., 116; Stiles·v. State, 5 id., 370. On question of argument of counsel: Chicago, R. I. & T. Ry. v. Jones, 10 Texas Ct. Rep., 353. On question of deadly weapon: Scott v. State, 10 Texas Ct. Rep., 839; Hierhalzer v. State, 11 id., 726.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Conviction of manslaughter, and his punishment fixed at four years confinement in the penitentiary; hence this appeal.

The circumstances of the homicide briefly stated show that appellant and deceased, John Hale, were rivals for the favors of Emma Benjamin. They were both visitors to her house. Some three months before the homicide, John Hale found defendant there and ran him away, and as defendant says, attempted to assault and cut him with a knife; and forbade appellant visiting there any more. On the other hand it is shown that appellant afterwards threatened to kill John Hale on account of his conduct in running him from Emma Benjamin's. On the night of the homicide, appellant was visiting Emma Benjamin, and had gone to bed with her. According to appellant's testimony, deceased came there about 9 o'clock (and the door being barred with a plank resting in a crack of the floor) demanded admittance, stating that he knew that Mack boy was in there, and he was going to kill both. As he made the remark it seems Emma got out of the bed and ran to the ·door. Just as

she got there, deceased burst the door open and shoved it back against the wall, Emma getting behind the door next to the wall. As he burst the door open, appellant slipped out of the bed, grabbed his pistol, lying nearby on a box. Appellant says deceased ran to the foot of the bed with his pistol in his right hand, and said, "I told you, damn you, if I ever caught you here again I would kill you, and I am going to kill you both." There were some coals of fire in the fire-place, and deceased was between appellant and the fire-place, and was seen by appellant with his pistol in his hand. Deceased not seeing appellant in the bed, struck a match and held it above his head, with his pistol still in his hand, appellant then shot, grabbed some of his clothes, and ran out of the door. He says he shot at him so he could get out of the house and keep him from killing him; that he did not know whether he had hit deceased or not; that he ran across the cotton patch, where his tracks were subsequently found; that he would not have shot at deceased, unless he had believed he was going to kill him. The State's testimony outside of this positive testimony, was purely circumstantial as to how the killing transpired; that is, it proved threats by appellant against deceased; it proved no pistol was found in Emma Benjamin's room, where deceased's body lay. No pistol was found in the yard where Emma told some of the witnesses directly after the killing, she had thrown it. Deceased's pistol was found, according to the testimony of the State's witnesses, in his saddle pockets, which were on his horse— his horse being hitched in Emma's yard at the time. This is a sufficient statement of the case to discuss the matters presented by appellant.

Appellant objected to two of the State's witnesses testifying that appellant's wife (Emma Benjamin) whom he married subsequent to the difficulty, and about a week before the trial, stated to them on the night of the homicide, and directly thereafter, that John Hale (deceased) had shot himself, and when they asked her where was the pistol, she stated she had thrown it in the yard. The objection urged was that she was the wife of appellant at the time of the trial, and she could not testify against her husband. The court in explanation to the bill seems to put the admittance of the testimony on the ground that it was res gestæ. We are unable from the bill itself to say whether or not it was res gestæ. If so, this evidence was properly admitted, notwithstanding the intermarriage of the parties subsequent to the homicide.

Appellant also complains that in the cross-examination of appellant's wife, the State was permitted to ask her questions not germane or connected with her examination in chief by appellant, who had placed her on the stand. But we do not believe there was error in this. We do not believe the court committed error in permitting the district attorney to allude to the failure of appellant to examine Emma Benjamin, his wife, at the time of the trial, in regard to the homicide, and in stating to the jury that his failure to produce his wife, who was an eye-witness to the transaction, showed that appellant was afraid to trust her testimony, and had fabricated evidence in his testimony as to how the diffi-

culty occurred. We understand the authorities to authorize counsel in argument to refer to the failure of a defendant to use his wife as a witness to a fact which occurred in her presence. Mercer v. State, 17 Texas Crim. App., 467. If criticism can be made to the failure of appellant to introduce his wife as a witness, it seems to us, that it necessarily follows, if appellant does introduce his wife, and fails to examine her as to facts within her knowledge, that this can be referred to and appellant criticised for his failure to so examine her. The rule being that the State cannot cross-examine her except as to matters brought out in argument by the appellant.

Appellant excepted to the charge of the court on manslaughter and on self-defense. We do not believe the criticism to the charge of the court on manslaughter is well taken. Moreover we believe the court's charge on self-defense, except as hereinafter stated, was correct. The only feature of the charge on self-defense, which we deem worthy of consideration, is the omission of the court to give a charge on the presumption arising from the use of a deadly weapon by deceased. Appellant, as heretofore shown, testified directly to the fact that deceased had a deadly weapon, and had it in his hand at the time of the homicide, declaring that he intended to kill appellant. According, to his statement, deceased was evidently looking about in the room for him with his pistol drawn. On the other hand, the State proved circumstantially that deceased did not have a pistol at the time of the homicide. However, this was a controverted fact, which the jury were required to decide, and inasmuch as defendant testified directly to the fact that deceased had a drawn pistol in his hand, we believe appellant was entitled to a charge on the use of a deadly weapon by deceased, and the presumption flowing therefrom, which he was entitled to have the court charge the jury. We understand this to be in accord with the decisions of this court. Ward v. State, 30 Texas Crim. App., 688; Hall v. State, 4 Texas Ct. Rep., 219; Scott v. State, 10 Texas Ct. Rep., 964.

In this connection another question arises. Suppose deceased did not have a pistol, but appellant believed he did have one, and believed he saw one in his hand, would he be entitled to said charge predicated on the appearances of danger? He was evidently entitled to a charge on the appearances of danger, and the court gave him such charge; but was he entitled to a charge on the use of a deadly weapon by deceased and the presumption flowing therefrom? We think so. Because of the failure of the court to give said instructions in favor of appellant, the judgment is reversed and the cause remanded.

*Reversed and remanded.*