### JOHN HENRY BATTLES v. THE·STATE.

### No. 4297.     March 11, 1908.

**1.—Rape—Charge of Court—Limitation.**

Where upon trial for rape the evidence suggested the issue of limitation, the court should have charged thereon.

**2.—Same—Impeachment—Conspiracy.**

Where upon trial for rape, the mother of the prosecutrix was not placed on the witness stand by the State because she was insane at the time of the trial, there was no error in rejecting testimony for the defense that merely went to impeach her or affect her sanity or credibility and which was not germane to the case, or effected the testimony of prosecutrix, and which had no connection with the case, or showed a conspiracy.

**3.—Same—Condition of Witness—Insanity.**

Where upon trial for rape, the State put under the rule a certain witness who was shown to be insane at the time of the trial, and of which the court and defendant's counsel were duly notified by the State's counsel, who refused to use her as a witness, there was no error.

**4.—Same—Argument of Counsel.**

Upon trial for rape there was no error in sustaining the objections of the State to the argument of defendant's counsel, who attempted to rehearse the facts of another rape case not on trial.

**5.—Same—Misconduct of Jury.**

Where upon trial for rape the jury, after retiring to consider their verdict, discussed other charges of rape against the defendant upon prosecutrix as pending against defendant, and also discussed other questions not in evidence, such as the credibility of a certain witness based upon the knowledge of a juror, etc., there was reversible error.

**6.—Same—Argument of Counsel.**

Upon trial for rape remarks of the State's counsel that he knew that there were other acts of intercourse but he could not show but one, to which defendant's counsel objected, the same was reversible error, although the court instructed the jury not to consider the same.

**7.—Same—Evidence—Other Acts of Illicit Intercourse.**

Upon trial for rape, while it was inadmissible to prove other acts of illicit intercourse, it was permissible by the State to show undue familiarity between

the defendant and prosecutrix, who was under age of consent; and to show the circumstances under which defendant and prosecutrix were thrown and associated together.

**8.—Same—Argument of Counsel—Husband and Wife.**

Where upon trial for rape, the defendant had failed to use his wife as a witness, there was no error in the State's counsel's comment on such failure.

Appeal from District Court of Ellis. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of rape; penalty five years imprisonment in the penitentiary.

The opinion states the case.

*Farrar & Pierson, W. P. Hancock* and *J. T. Williams,* for appellant.— On question of limitation: Scott v. State, 10 Texas Crim. App., 112; State v. Carpenter, 74 N. C., 230; Parker v. State, 34 S. W. Rep., 265. On question of other acts of intercourse: Smith v. State, 44 Texas Crim. Rep., 137; 73 S. W. Rep., 401. On question of misconduct of jury: Ysaguirre v. State, 42 Texas Crim. Rep., 235; 58 S. W., Rep., 1005.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of rape, and his punishment assessed at five years confinement in the penitentiary.

Appellant asked the court to give the jury the following charge: "You are instructed that one of the issues in this case is, that the offense, if any, occurred within one year prior to the filing of the indictment herein, which is September 28, 1906, and if from the evidence, if any, or from the lack of evidence upon this issue, you have reasonable doubt thereon, you will acquit defendant." We think the evidence in this case suggested the issue, and the court should have given the charge. There is a marked lack of certainty in the evidence as to whether the offense was committed within one year of the filing of the indictment.

Bill of exceptions No. 1 complains of the following: The State in-introduced Ida Dutton (the prosecutrix) and she testified that about November 1st, in Ellis County, Texas, the defendant had carnal intercourse with her, effecting penetration; that at said time she was under the age of fifteen years, not being the wife of appellant. On cross-examination, said witness testified that she was going to swear that she saw one Warren Sharp, in the year 1904, come into her mother's room one night armed with a pistol, with intent to do some violence to her mother. She further testified, that she did not tell any one of defendant having intercourse with her for nearly a year after it occurred, to wit: September 6, 1906; that she then told it for the first time to her mother, under the following circumstances: "Her mother on that morning (September 6, 1906) told her (Ida), that she (her mother)

had had a dream and had dreamed that she (Ida) had had a baby, and that it looked·like defendant; and her mother commenced asking her whether defendant had had intercourse with her, which she at first denied; but after her mother had persisted in her question, she admitted the intercourse."

It further appeared in the testimony, from the witness W. H. Fears, that as a matter of family history, obtained from the testimony of J. H. Dutton (prosecutrix' father) that at certain periods, Mrs. Dutton (prosecutrix' mother) had insane delusions; and that she, the said Mrs. Dutton, was suffering from one of those periods at the time she claimed to Ida that she had a dream as hereinbefore stated.

Thereupon the defendant offered to prove by the witnesses hereafter named, to wit: Ed Whittaker, G. H. Taylor and Warren Sharp, that in the year 1904, said Mrs. J. A. Dutton lived in Haskell County, and that during said year said witness became temporarily insane, and during such condition of temporary insanity, she repeatedly accused Warren Sharp with having come into her room one night, armed with a pistol, with intent to kill her, or do her other physical violence; and further said, that Warren Sharp and her husband had conspired to kill her, so that her husband could marry a local school mistress. And said witnesses would have qualified and given other circumstances, showing insanity at the time on the part of Mrs. Dutton; and that such charges were in fact untrue, but at the time said witness (Mrs. J. A. Dutton) was afflicted with an insane delusion as to such charges, and the said Warren Sharp would have testified that he never in his life went into Mrs. Dutton's room at night with a pistol and never did attempt upon her any violence, and never did conspire with any one.

Defendant further offered to prove, and could have proven, by the witnesses Tom Chambers and his wife, who were present at the trial, that at their house in Ellis County, during the summer of 1905, the said Mrs. Dutton repeated to them, in the presence of Ida Dutton, the aforesaid charges made against Warren Sharp, and told them that Ida and her son Tom would have sworn that they were true, and had her husband (J. A. Dutton) stuck to her in the charges, they would not now have to work so hard; but would have gotten some mules and money out of Sharp. Defendant, in support of his contention, in addition, offered to prove and could have proven by the county attorney, and by the assistant county attorney, that the said Mrs. J. A. Dutton was sworn as a witness and put under rule as a witness upon this trial, believed to be sane at the time; but that since the trial commenced, and now it is believed by them that she has become insane, and tells them that the facts she charged against Warren Sharp are true.

Appellant further contends that said testimony was material and relevant, since the prosecutrix had affirmed her willingness to swear to the happenings of the charge made against Warren Sharp, by her mother, as a result of an insane delusion; and her willingness and actual testimony against Battles (the defendant) brought about, as de-

fendant contends, by an insane delusion of her mother, through an imaginary dream, was a strong circumstance touching the credibility and weight of the testimony of said witness. That said testimony was admissible on the theory of conspiracy to extort money from appellant and as affecting the credibility and weight of the testimony of prosecutrix.

The foregoing long bill of exceptions is approved with this qualification: "Warren Sharp was sworn as a witness, and testified for defendant fully and without objection by the State, in which he said no demand for money was ever made on him by the Duttons. With reference to what the bill states as to what Ida Dutton was going to swear about Warren Sharp entering her mother's room, the Court of Criminal Appeals is referred to what she testified before the court, when the jury was retired, in regard to this matter, viz.: 'That she saw some one in her mother's room, and took it to be him. I don't know who else it was; of course, he was there. I did not see him with a pistol.' The court's view was, that the offered testimony could have been used only for the purpose of testing Mrs. Dutton's competency as a witness, if she had been offered by the State, and this not having been done, that the testimony was inadmissible."

We hold the ruling of the court was correct. Mrs. Dutton had insane delusions in which she had induced the prosecutrix to make false accusations against third parties cognate in nature to that appellant is here being tried for, and appellant entered into a conspiracy, and it would be legitimate on cross-examination of the prosecutrix to ask her about said conduct; and if she denied same, to prove the converse by any witness accessible, after laying the proper predicate. But, as suggested by the court, the mother of prosecutrix was not placed upon the stand. She was crazy at the time of the trial, and testimony that merely goes to impeach her or affect her sanity or credibility would not be germane testimony to affect prosecutrix, unless the connection is shown by the testimony of the prosecutrix with said conspiracy or insane delusions.

Bill of exceptions No. 2 complains of the following: At the commencement of the trial Mrs. J. A. Dutton, was sworn as a witness by the State, and put under the rule. Just before the State closed its testimony in chief, State's counsel, in questioning her, Mrs. Dutton, out of court, found that she was, in their opinion, then insane, and so notified the court and defendant's counsel. Appellant then proceeded to put on all of his testimony, except certain statements, which would have been beneficial to him, as will hereinafter appear from the testimony of Mrs. J. A. Dutton, had she, at the time been a competent witness. Then follows a long statement about the condition of Mrs. Dutton, what she told the county attorney and other parties. This testimony, as suggested, would not have been admissible.

Bill of exceptions No. 3 shows that J. T. Williams, appellant's counsel, in his argument, was admonishing the jury to be careful in their

deliberations and weigh well the testimony, to the end that no mistake be made, and not to take the testimony of a woman to be true, simply because the witness was a woman; and undertook to call the attention of the jury to a case that was tried in Ellis County about twenty years ago, which was the case of Henry Tomlin, who was convicted by a jury of Ellis County upon a charge of rape, and given a life term in the penitentiary; and that after serving about seventeen years of his time, the woman who swore that he raped her died, and on her death bed confessed that she had sworn falsely against Tomlin. State's counsel objected to the character of argument and illustration, and the court sustained the exception. The court appends to this bill the following explanation: "Said J. T. Williams, after admonishing the jury to weigh well the testimony of Ida Dutton, and other things as stated in the first portion of said bill, then and there used this expression: 'Be careful that you are not the second jury in Ellis County to make an awful mistake in this kind of case.' And then started to refer to the Tomlin case, and upon objection, the court stopped counsel and admonished him not to do so. The court does not wish to be understood as certifying that the matters in the bill as the incidents of the Tomlin case are the facts, or that the trial, conviction, confession and pardon were matters of public history in Ellis County." We do not think there is any error in the ruling of the court. Counsel have wide scope, properly so, in the argument of a case, but we do not think it is permissible to rehearse the facts of another case, in order to ring from a jury a verdict of conviction or acquittal.

The 11th ground of the motion, complains that the jury in their deliberations and before reaching a verdict, mentioned and discussed the fact that there were other indictments against this defendant, charging him with rape on Ida Dutton, and mentioned and discussed the fact that defendant's wife was not present and with him, and was not placed upon the stand by him as a witness, and other testimony than that introduced on the trial as to the veracity and credibility of Will Britt, a material witness for the State, was received by the jury. This matter is presented by an affidavit of one of the jurors, C. A. Stephenson, who swears, in substance, as follows: That he was a juror in said case, and that said jury deliberated from November 8, 1907, until Sunday (November 11th) and up till Sunday stood two for conviction, seven for acquittal on the ground that the testimony was insufficient, and three for acquittal because they did not believe defendant guilty. While deliberating upon the case, before an agreement, some of the jurors questioned the veracity of Will Britt (a negro State's witness) and "I told him or them, that I knew Will Britt, had lived near him; that he was truthful and honest, and above the average for a negro. I remember further, that before reaching a verdict, some juror mentioned the fact in the jury room, that there were other cases pending against the defendant for rape upon Ida Dutton. I testify further, that before we reached a verdict, I told some juror or jurors, if a con-

viction was rendered I would sign a petition for pardon, and I think others of the jurors so expressed themselves. I further remember the fact that the fact was mentioned that defendant's wife did not take the witness stand and was not with him in the courthouse, and some juror suggested they were in a row. All these matters happened after the case was submitted to us by the court and before a verdict was agreed upon. The mention of a signing of a petition to pardon, was on Sunday, just a short while before an agreement was reached." None of the other jurors were sworn in the case; neither party making an effort to get same. Motion was filed the last day of court. After the affidavit was filed, this witness was examined and cross-examined on his testimony, but no material change made in the affidavit, as we understand same, which is above copied. We think said misconduct on the part of the jury itself requires a reversal of this case. In other words, we think it is that character of misconduct that was calculated, under the circumstances of this trial, to prejudice the rights of appellant. Certainly it could not be proved that he had other charges of rape upon prosecutrix pending against him as proof in the case. It would have been very damaging and clearly reversible to have done so, and we hold that it probably injured appellant in this case. Nor was it proper for the juror to tell what he knew about the witness Will Britt, since the record shows that he was quite a material witness, and no assault having been made by the county attorney upon his testimony, or by the defense, it was not proper for the juror to say how honest and truthful he was, and thereby remove the doubt from the minds of the jury as to the veracity of the witness.

Bill of exceptions No. 5 shows that the county attorney in his argument used the following language: "We know there are other acts, but we can show but one." Defendant's counsel objected for the following reasons: Because, from the very beginning of the case, the defendant had attempted to select a jury who knew nothing about the alleged facts of the case, and throughout the introduction of the testimony defendant had attempted to prevent the introduction of testimony regarding other acts, or other cases against this defendant. The court appends to this bill the following qualifications: "That upon the county attorney using the language therein stated, counsel for defendant objected, and the court immediately and without waiting for said counsel to state the grounds of the objection, stopped the county attorney in his argument, reprimanded him for such statement, and then and there instructed the jury verbally not to regard or consider same for any purpose, without a request from counsel to do so, and then at their request, instructed the jury in writing to the same effect." This argument was improper.

Bill of exceptions No. 6 complains that prosecutrix was permitted to testify that John Henry Battles was a married man, and was her uncle by marriage, and that during the year when she was thirteen years old, that the defendant took her in a buggy many times to Waxahachie and

elsewhere, and bought several things, dresses and the like. Then the State asked the said witness: "Now, Ida, when you would come here to Waxahachie, what time would you usually go back home?" The court replied, "The question is rather indefinite." The county attorney then, in the presence of the jury, replied, "Your Honor, there is so many days, and I don't know how to make it definite," and turned to the witness and asked, "How late did you ever get home, Ida?" Over objection, she testified, "Well, most of the time late; sometimes it was pretty tolerably late. One time, when we went out, we had a trunk on the buggy. That evening I got home before sundown. There was nobody in the buggy but the defendant and myself. In Mustang Creek bottom, I saw a negro by the name of Will Britt. At the time I saw him the defendant was trying to hug and kiss me. That was about the last of October, or the first of November. A few days after that I was in town with defendant again. We left town in a buggy, tolerably late, and went back the same road by Mr. Dickerson's house, and went straight on down the road and stopped at Mustang Creek bottom." This character of testimony, showing merely intimacy and long and continued association is' admissible. As heretofore held by this court, any testimony or other acts of illicit intercourse would not be admissible than the one proved in the case then on trial, but it is clearly permissible for the State to show undue familiarity, and the circumstances under which appellant and prosecutrix were thrown and associated together.

Bill of exceptions No. 8 complains of the following statement of the county attorney in his argument. Defendant was sitting in front of the jury, and his wife not being in the courtroom, the county attorney turned to the defendant, and made a gesture towards him, saying, "Why did you not place his wife on the witness stand, and why is his wife not now by his side?" Appellant objected to this argument, and asked the court to exclude it, which objection was overruled. The court refused to instruct the jury not to consider said remarks. We think the argument that the wife did not testify was proper. Where a defendant is on trial for a crime, the absence of any testimony that is wilfully omitted on his part or that the evidence suggests has been wilfully omitted on his part, forms a predicate for any legitimate deduction for or against appellant. Of course, the State cannot place appellants wife upon the stand, but if appellant refused to do so, it is a matter that can be commented upon.

For the errors suggested, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*