### E. F. YEIRAL v. THE STATE.

#### No. 4152. Decided May 19, 1909.

**Assault to Murder—Husband and Wife—Evidence—Cross-examination.**

Upon trial for assault to murder, where the defendant introduced his wife as a witness, and the court, upon cross-examination of the witness by the State, permitted the State to extort from the lips of the wife other and additional criminative facts not inquired into in the examination in chief, the same was reversible error, whether excepted to or not. Following Hobbs v. State, 53 Texas Crim. Rep., 71, and other cases.

Appeal from the District Court of McClellan. Tried below before the Hon. Richard I. Munroe,

Appeal from a conviction of aggravated assault; penalty, a fine of $750 and two years confinement in the county jail.

The opinion states the case.

*O. L. Stribling,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of aggravated assault, and his punishment assessed at two years imprisonment in the county jail and a fine of $750.

The only question in this record we deem necessary to review is the matter presented by bill of exceptions No. 23. The appellant, in his own behalf, introduced as a witness his wife, whereupon the following examination of said witness was made by the defendant's counsel:

"Q. Is the defendant your husband? A. Yes, sir.

"Q. Are you living together now as man and wife? A. Yes, sir.

"Q. Were you living together as husband and wife in March, 1907? A. Yes, sir.

"Q. Do you know Jim Sypert? A. Yes, sir.

"Q. Did you know Jim Sypert in November, 1906, the fall before the shooting took place? A. Yes, sir.

"Q. Mrs. Yeiral, state whether or not you had a conversation with Sypert near the cow pen during the fall preceding the shooting by your husband in March, 1907? A. I did not speak to him.

"Q. Did anyone speak to you or your daughter while you were at the cow pen in the fall preceding the shooting? If so, what was said? A. Some one called for Mary some time before the shooting.

"Q. State just where you were, and what time of day or night it was, and what the parties said. A. It was in the evening. I was down there doing the milking and some one hallooed several times. They hallooed for Mary.

"Q. Who is Mary? A. She is my daughter.

"Q. Did you see the person who was calling to your daughter? A. No, sir; I could not see. It was getting dark.

"Q. Could you recognize the voice? A. Yes, sir.

"Q. Who did you recognize? A. Jim Sypert's voice.

"Q. Jim Sypert, the man that lived close to you? A. Yes, sir.

"Q. He was your neighbor? A. Yes, sir.

"Q. What did this party say when calling for Mary? A. He called, 'Oh, Mary,' and I told him to come closer, and then he never called any more.

"Q. He never answered again? A. No, sir.

"Q. Did he say anything besides calling the daughter's name? A. Nothing but the name.

"Q. How far, judging from the sound of the voice, did he appear to be from where you were? A. About 300 or 400 feet.

"Q. State whether or not you know the direction from which the voice came? A. Yes, sir; it came from Sypert's place.

"Q. State whether or not you ever told your husband of the fact of Sypert calling to your daughter? A. Yes, sir; I told him just as soon as he came in for supper.

(State's counsel):

"Q. That same night? A. Yes, sir.

Appellant's counsel:

"Q. What did you tell your husband? A. I told him that Sypert had called for Mary—that he made a mistake and thought that I was Mary.

"And upon cross-examination the following questions were propounded by the State to said witness:

"Q. Where is Mary now? A. She is married, and lives in the neighborhood of Elk.

"Q. Who did she marry? A. Rudolph Kline.

"Q. Is that the young man who worked at the house at the time of the shooting? A. Yes, sir.

"And thereupon counsel for the State propounded the further question:

"Q. Is he the same man that you sent over to Jim Sypert's house on the night of the shooting?

"To which question the defendant objected on the ground that it was improper, and called for a matter that was improper for cross-examination, to which objection the court stated: 'You can not cross-examine the wife on matters that were not brought out on direct examination,' to which action of the court the defendant then and there excepted, whereupon the State propounded the following questions, and the following proceedings were had before the court and jury in reference thereto, before the witness answered any of said questions:

"Mr. Neff: Did you send Kline over there?

"Mr. Stribling: Now, if the court please, we object to counsel for the prosecution deliberately asking improper questions in order to force us to object to every question. We also object to the last question.

"The Court: Overruled.

"Mr. Stribling: Exception. I do not think it is proper practice for counsel to ask questions that they know are not proper questions in order to force counsel of the other side to make objections. It has an effect on the jury, and we object to the court permitting it. The counsel for the prosecution knows it is a violation of the rules of evidence, and we object to the witness being subjected to any questions relative to matters not properly brought out on direct examination.

"The Court: I would not undertake to rule in advance relative to these questions. Your objection is overruled.

"Mr. Stribling: Exception.

"Mr. Neff: Q. Mrs. Yeiral, where were you the night Jim Sypert was shot?

"Mr. Stribling: Objected to. We request the court to protect the

defendant from this sort of cross-examination. It is liable to prejudice his rights before the jury.

"The Court: Objection sustained.

"Mr. Stribling: Will the court say that counsel has the right to ask questions which are improper, and which are only asked for the purpose of compelling us to object? Their purpose in asking along this line is to compel us to object to everything.

"The Court: I do not want to place you in any false position.

"Mr. Stribling: This cross-examination is for no other purpose than to make us object.

"Mr. Taylor: The rules of practice are that counsel of either side may object to the questions propounded by the opposing side, stating the grounds of their objections.

"The Court: That is my understanding of the matter.

"Mr. Cross: Do you hold that the questions which have been asked this witness, and to which we have been objecting, are proper ones?

"The Court: I am not going to make any hypothesis of it. Every time an improper question is asked I will rule it out.

"Mr. Cross: You will find it only necessary to rule against the other side. We never ask improper questions. They are asking these questions in an improper way. They are putting the words in the witness' mouth. Do I understand that the court is going to permit these violations?

"The Court: I do not understand your reference as to the violation in the manner in which the witness is testifying.

"Mr. Stribling: The counsel for the defendant moves the court to require the counsel for the State to desist from asking any further questions from this witness relative to the facts which led up to the commission of the offense for which the defendant is charged, except matters which were brought out on the direct examination.

"The Court: Motion denied.

"Mr. Stribling: We take an exception to the court's ruling. We ask the court to protect us from the counsel for the State, as any further examination of this witness relative to matters not brought out on direct examination is objected to by us for these reasons: That we believe that the counsel for the State are asking those questions to compel us to object to everything that is asked; they are liable to prejudice the rights of the defendant before the jury, and, furthermore, it is not proper testimony for the jury to hear.

"The Court: Your objections are overruled.

"Mr. Stribling: Exception.

"Mr. Thomas: As I understand the rule, we have the right, in cross-examining the witness, to interrogate her as to what took place that night.

"Mr. Neff: Q. Is it not a fact, Mrs. Yeiral, that on the night your husband shot Jim Sypert, he also committed an assault on you, and you were compelled to seek protection at Sypert's house?

"Mr. Stribling: If the court please, at this time we desire to say we will make no further objections to counsel for the State asking questions along the line we have been objecting to, as we feel it may prejudice the defendant before the jury.

"The Court: I don't quite follow you.

"Mr. Stribling: I have stated to the court that we will make no further objection to the questions propounded by the counsel for the State to this witness, for the reason that, in view of the fact that the court has overruled our motion to instruct the counsel for the State not to ask any further questions of this witness touching on matters not brought out on direct examination; that we believe that further objection by us will only prejudice the rights of our client, as the court has refused to prevent the counsel for the State from asking questions that are stated to be contrary to the rules of evidence, and that we make no protest and no objection, and only do what is for the best interests of our client.

"The Court: You have been making objections—

"Mr. Stribling: Understand we do not protest. We make no objections. We interpose no objections. To do so, we believe, will prejudice the rights of our client before the jury.

"Mr. Neff: Q. Now, Mrs. Yeiral, is it not a fact that on the night of the shooting you fled from your home and sought protection at the home of Jim Sypert? A. No, sir; we were home when the shooting took place. After the shooting we were frightened and went out.

"Q. Did you send Rudolph Kline for Jim Sypert and tell him to come over to your place? A. No, sir; the boy went himself.

"Q. How do you know that the boy went over for Jim Sypert? A. I do not know that he went over there.

"Q. Did you get in a closet in Sypert's house? A. No, sir; I did not.

"Q. Where did you get over there? A. I was frightened after the shooting and went over there to the house.

"Q. What part of the house did you stay in? A. Over there in the room where he was laying in bed.

"Q. Who do you mean by 'he?' You say 'he' was lying in the bed— who do you mean? A. Jim Sypert.

"Q. Were you there when they carried Sypert in? A. I came there after Sypert was carried in.

"Q. Did you see the shooting? A. No, sir; I did not.

"Q. Where were you at the time of the shooting? A. I was in the kitchen.

"To which action of the court in permitting the State to propound the question to the defendant's wife, and in permitting her to answer the same, the defendant objected to, as hereinabove stated, and for the reasons therein stated, and to which action of the court in overruling said objections the defendant then and there excepted, as hereinabove stated, and here now tenders this his bill of exception, and asks that the

same may be examined and approved by the court, and filed as a part of the record of this cause.

"O. H. Cross,
"O. L. Stribling,
"Attorneys for Defendant.

"This bill is allowed, with the following qualification, as the record will show: The court did not permit the witness, Mrs. Yeiral, to answer any question on the cross-examination on any matter not brought out on the direct examination, until counsel for the defendant in open court withdrew all objections and protests to any questions propounded to said witness by the State, as to what occurred on the night of the shooting.

"Richard I. Munroe, Judge."

We hold that the cross-examination by the State of the wife of appellant was not a legitimate cross-examination, but that same drew out of the appellant's wife, over his objection, other and additional criminative facts. However, this court held in the case of Brock v. State, 44 Texas Crim. Rep., 335; 71 S. W. Rep., 21, that the introduction of this character of testimony is reversible error whether excepted to or not. The writer of this opinion doubts the accuracy of this statement, but it is the law of this State. However, we have held in the case of Hobbs v. State, 53 Texas Crim. Rep., 71; 112 S. W. Rep., 308; Knapp v. State, 54 Texas Crim. Rep., 633; 114 S. W. Rep., 836, and Marsh v. State, 54 Texas Crim. Rep., 144; 112 S. W. Rep., 322, that it is reversible error for the court to permit the State to extort from the lips of the wife any testimony when the same is not a legitimate cross-examination of the wife voluntarily made by her at the instance of her husband. The course of the cross-examination at least authorizes a reversal of this case.

We accordingly hold that the court erred in admitting this testimony, and for said error the judgment is reversed and the cause is remanded.

*Reversed and remanded.*