ELBERT EADS v. THE STATE.

No. 3231. Decided October 14, 1914.

**1.—Murder—Communicated Threats—Charge of Court.**

Where, upon trial of murder, it was an issue in the case as to whether the threats by deceased had been made, but the evidence showed that such threats were communicated to the defendant, it was reversible error for the court to charge requiring the jury to find that such threats had been made as defendant would have the right to act even though the threats had not in fact been made. Following Buckner v. State, 55 Texas Crim. Rep., 511.

**2.—Same—Evidence—Reproduction of Testimony.**

Where, upon trial of murder, the evidence showed that certain of the State's witnesses were beyond the jurisdiction of the court, but no proof was offered that the statements introduced in evidence were in fact the testimony of said witnesses, the same was error.

**3.—Same—Evidence—Husband and Wife—Practice.**

Upon trial of murder, it was improper to permit the State to call defendant's wife to the witness stand and force the defendant in the presence of the jury to object to her testifying.

**4.—Same—Conduct of State's Counsel.**

Upon trial of murder, it was improper to permit State's counsel to say to the defendant when on the witness stand: that he knew under the law his wife could not testify unless he waived his objection to her testimony.

**5.—Same—Argument of Counsel.**

Upon trial of murder, it was improper for State's counsel to argue to the jury that defendant had closed the mouth of his wife by refusing to waive objections to her testimony with reference to the threats made by deceased.

**6.—Same—Waiver—Husband and Wife.**

Article 795, Code Criminal Procedure, does not permit the spouse on trial to waive his objections to her testimony. Following Brock v. State, 44 Texas Crim. Rep., 335, and other cases.

**7.—Same—Evidence—Case Stated.**

Where, upon trial of murder, defendant testified that his wife, who was the daughter of the deceased, had told him not to go to deceased's house, that the latter would kill him, and another witness testified that he heard the declarations of the wife, and defendant did not place his wife on the witness stand, it was reversible error to permit the State's counsel to place said wife on the witness stand and force defendant to object to her testifying. Prendergast, Presiding Judge, dissenting.

**8.—Same—Argument of Counsel—Husband and Wife.**

Where defendant refused to place his wife on the stand, it is not improper for State's counsel to refer to that fact in his argument, but he could not use the wife so as to convey to the jury the idea that if permitted to testify against the husband she would contradict his testimony, and defendant can not waive this right in behalf of the State. Prendergast, Presiding Judge, dissenting.

**9.—Same—Evidence—Irrelevant Testimony.**

While the State could show friendly relations between the witness and the defendant to disclose his interest and bias for the defendant, it would be improper to elicit said testimony for the purpose of showing that defendant, who was on trial for murder, was a cow thief, and thus to use it in argument; however, the bill of exceptions is defective.

**10.—Same—Argument of Counsel—Former Conviction.**

Upon trial of murder, it was improper to permit State's counsel to refer to the former conviction of defendant, even if defendant's counsel had transgressed the law in this respect in his argument, as his conduct would have to be very pronounced in this respect before State's counsel would be authorized to refer to a former conviction of defendant; however, defendant's bills of exception are defective.

**11.—Same—Separation of Jury—Practice.**

Where the bills of exception, as qualified by the court, with reference to the separation of the jury, would not in and of themselves, perhaps, present reversible error, yet such matter should be prevented by the trial court, and avoid getting them into the record on appeal; as in felony cases, the jury shall

not separate, unless by permission of court and consent of counsel and under charge of an officer.

**12.—Same—Misconduct of Jury.**

Where the judgment is reversed and the cause remanded on other grounds and the evidence with reference to the misconduct of the jury is vague and indefinite, the same need not be considered.

**13—Same—Argument of Counsel.**

See opinion in which the court deprecates the· conduct of private prosecutors in using unfair argument to secure a conviction.

Appeal from the District Court of Collingsworth. Tried below before the Hon. J. A. Nabors.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*G. H. Culp* and *R. E. Taylor* and *J. L. Lackey* and *Clinton Small*, for appellant.—On question of argument of counsel and of referring to former conviction: House v. State, 9 Texas Crim. App., 567; Downing v. State, 61 Texas Crim. Rep., 519, 136 S. W. Rep., 471; Benson v. State, 56 Texas Crim. Rep., 52, 118 S. W. Rep., 1049; Harville v. State, 57 Texas Crim. Rep., 486, 123 S. W. Rep., 1109; Paris v. State, 62 Texas Crim. Rep., 354, 137 S. W. Rep., 698.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of cross-examination of wife: Mercer v. State, 17 Texas Crim. App., 452; Armstrong v. State, 34 Texas Crim. Rep., 248.

HARPER, JUDGE.—Appellant was convicted of murder upon implied malice, and his punishment assessed at fifteen years confinement in the State penitentiary.

The court gave a very full and fair charge with one exception. The defendant testified to threats being communicated to him; two witnesses testified they had communicated the threats to defendant. The State did not concede that the threats had been made, but seriously contested that issue, and yet the court in his charge required the jury to find that the threats had been made, instructing them, "Now if you shall find that the deceased had made threats against the life of defendant, and that such threats had been communicated to the defendant," etc. This is not the law where there is an issue in the case as to whether or not the threats had been made, but if defendant had been told that threats had been made by deceased and he so believed, he would have the right to act, even though the threats had not in fact been made. (Buckner v. State, 55 Texas Crim. Rep., 511, and cases there cited.) While the objections made to the charge at the time it was presented to counsel were not specific enough to call the court's attention to this error in the charge, perhaps, yet we call attention to it so that it will not occur on another trial.

Appellant, in two bills of exception, complains of the action of the court in permitting the testimony of John Brown and Clark Hughes to be reproduced. The evidence sufficiently shows that both were beyond the jurisdiction of the court—that Brown is now a permanent resident of Oklahoma, and Hughes a resident of New Mexico. (Whorton v. State, 69 Texas Crim. Rep., 59, 152 S. W. Rep., 1082, and cases there cited.) But the record before us does not disclose that there was any proof offered that the statements introduced in evidence was in fact the evidence of said witnesses. It appears that what is termed a stenographer's report of the evidence of the witnesses was introduced, but the stenographer who took the testimony did not testify in the case, and no person testified that this in fact was the testimony of the gentlemen named. Some proof should have been made that this was in fact their testimony on the former trial before the evidence should have been admitted.

By various bills of exception the following facts are shown: First. That while appellant was testifying he was asked the following question: "You know that under the law your wife can not testify in this case unless you waive your objections to her testimony?" and when appellant's counsel objected to the question, State's counsel remarked: "All the authorities hold that a wife can testify unless the defendant objects to same—we can tender this woman as a witness, and if they object, her mouth is closed, but if they do not object, the law books say that the witness is competent." Second. After appellant had testified counsel for the State called Mrs. Eads, appellant's wife, around and had her take the witness stand, and forced appellant then and there in the presence of the jury to object to her testifying; and, third, in his closing argument to the jury State's counsel argued to the jury that "appellant had closed the mouth of his wife by refusing to waive objections to her testimony with reference to the threats made which had been testified about, which she communicated to the defendant," etc. It was highly improper to permit State's counsel to call appellant's wife to the witness stand. Article 795 of the Code of Criminal Procedure provides that "the husband and wife may, in all criminal cases, be witnesses for each other, but *they shall in no case testify against each other* except in criminal prosecutions for an offense committed by one against the other." This provision of the statute is discussed at length in Brock v. State, 44 Texas Crim. Rep., 335, and the authorities digested, and it was there held that was a matter the person on trial could not waive, because the statute had provided that she was an incompetent witness; that she can be a witness for him, but not against him, and when called by him she can only be cross-examined about matters which he had elicited on direct examination. Of course, this would embrace matters which would tend to show that her testimony was false, but in no instance can the State first call the wife as a witness except in case of an offense committed by him against her. The rule as announced in the Brock case, supra, has been adhered to in Davis v. State, 45 Texas Crim Rep., 292; Spivey v. State, 45 Texas Crim. Rep., 496; Yeiral v.

State, 56 Texas Crim. Rep., 267; Woodall v. State, 58 Texas Crim. Rep., 513. Appellant on the trial of this case had testified that his wife had told him not to go after the things at deceased's (her father's) house—that her father would not allow appellant on the place, and had said if appellant did come on the place he (deceased) would kill him. Hildred Hill also testified that he was present and heard Mrs. Eads so tell appellant. This was one of the threats relied on by appellant to show deceased's state of mind towards him, and how the transaction really appeared to him at the time of the killing of deceased did the things appellant contended he had done. The State recognized the force of this testimony, and improperly sought to break the force of it. If after appellant and Hill had so testified and he did not see proper to call his wife, as a witness, the fact he had not called her as a witness could be referred to by counsel for the State in their argument, as has been frequently decided by this court, for it was in his power to call her as a witness. (Reeseman v. State, 59 Texas Crim. Rep., 430, 128 S. W. Rep., 1126; Battles v. State, 53 Texas Crim. Rep., 202; Tabor v. State, 52 Texas Crim. Rep., 387; McMichael v. State, 49 Texas Crim. Rep., 422; Richardson v. State, 44 Texas Crim. Rep., 211, and cases cited.) In many of the States it is held otherwise. (Knowles v. State, 15 Mich., 408; Cole v. State, 75 Miss., 142; State v. Shonse, 188 Mo., 473, and cases cited.) But in Texas the rule has become settled that it is not improper to refer to the fact that the defendant had failed to call his wife to substantiate his testimony when she is placed in position where she could do so, for the law gives him that privilege. However, we have never gone to the extent of holding that the State, while introducing its evidence, could so use the wife as to convey to the jury that if permitted the wife would testify against the husband and give the lie to the testimony introduced by him and testified to by him. Appellant had not closed the mouth of his wife—the law did that. Whether it is best for the law to do so may be a question about which minds differ, but we do not think anyone can question that it is the law that does so now. Neither, under the authorities, was it a provision of law which appellant could *waive* in behalf of the State, and counsel for the State was in error in so stating in the presence of the jury, and it was highly improper for him to ask appellant while on the witness stand "if he, appellant, would waive his objections and permit his wife to testify in behalf of the State." This was unfair cross-examination, for the law does not sanction him giving such waiver. He had killed his wife's father. If he did not desire his wife to testify that continued friendly relations might continue between her and her mother, this was commendable in him. If, on the other hand, his wife had turned against him because he had killed her father, the law says that the communications that took place between her and appellant should not be disclosed by the wife, and she can not testify against him, now that perhaps she feels unfriendly towards him because he is charged with killing her father. The State by its remarks and by its conduct could not have done otherwise than to have created the impression on the minds of the

jury, that if "appellant had not closed the mouth of his wife" she would have denied communicating any such threat to appellant as he testified to and the witness Hill testified she did communicate, and this was the object and purpose of the State in its conduct and by its remarks. Such evidence from that source, the law says, is inadmissible, and it was such error as ought to and will cause a reversal of this case.

Again it is shown by bills that in the cross-examination of appellant and his witnesses the question was asked, "if it was not a fact they associated with appellant, drank with him and branded cattle with him?" and that such fact was commented on by the private prosecution in his closing speech. It is always permissible to show association, friendly relations, and that the witness worked with appellant, as showing his interest and bias, and as affecting the credibility of his testimony, and if this was the object and purpose of the prosecution in asking the questions, there was no error. (Mason v. State, 7 Texas Crim. App., 623; Bonnard v. State, 25 Texas Crim. App., 173; Bennett v. State, 28 Texas Crim. App., 342; Reddick v. State, 47 S. W. Rep., 993; Green v. State, 54 Texas Crim. Rep., 3; Gelber v. State, 56 Texas Crim. Rep., 460.) However, if the object and purpose, as contended by appellant, was to elicit testimony tending to show that appellant was a cow thief, and it was so used in argument, it was error, for appellant had the right to be tried as to whether or not he was guilty of this offense, and only testimony legitimately bearing on that issue should have been admitted. And the fact that he was a cattle thief, if he is one, should not have been paraded before the jury to prejudice their minds against him. Some of the questions asked appellant on cross-examination, if he had been associated with a certain person in branding cattle, not a witness in this case, and who has been before this court charged with the crime of cattle theft, would seem to bear out the contention of appellant. However, the bill is not full enough in its allegations to show that this was the purpose of the State, and as presented they show no error, but we have said this much so that on another trial if it should appear to the court that this was the object and purpose of the questions, appellant's objections should be sustained. None of the witnesses to whom the questions were propounded had ever branded cattle with appellant, if they state the truth, and certainly the State had been misinformed, or it had some object other than to show intimacy in propounding the questions, but it was elicited that appellant had branded cattle with a person who had been before the court charged with cattle theft, in that same county and who was not a witness in this case.

Again it is shown that in argument the private prosecution urged that "because one jury has miscarried, or has made possible the miscarriage of justice in this case is no reason why you should," and "because another jury in this county failed to do their duty by *only giving this man ten years in the pen* is no reason why there should be coming from this courtroom at this time any such verdict, inviting and permitting blood and murder to stalk forth and be congratulated." The court, in approving these bills, says that such argument was in reply

to the argument made by appellant's counsel without stating what argument appellant's counsel made. Appellant refused the bill as thus qualified and proved the remarks were made by private prosecution in a bystander's bill, but in his bill he does not have his witnesses state that counsel for appellant had not referred to the prior trial and the prior conviction. The language attributed to private prosecution in both bills is exactly the same, the only difference in the two being that the court says such remarks were made in reply to argument of appellant's counsel, while the bystander's bill is silent on that question. Counsel for appellant in this court vehemently deny that they said anything about appellant having been convicted in the former trial and given ten years in the penitentiary. If appellant desired to except to the qualification of the court in his bystander's bill he should have shown that he did not refer to the former conviction and sentence in his argument to bring the matter properly before us for review. Article 823 of the Code provides that in case of a new trial, "the former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in argument." If counsel for appellant had referred to the former conviction in his argument, he was transgressing the law, and he should have at once been stopped by the court, and his conduct would have to be very pronounced in this respect before State's counsel would be authorized to use the argument the bills show he did use in this case. The law says that the former conviction shall not be referred to in the argument, and we trust that the trial court will see that it is obeyed on another trial.

Counsel also complain of the separation of the jury. The bills as qualified would not in and of themselves perhaps present reversible error. But we have carefully read the testimony adduced on the hearing, and it shows that two jurymen were allowed to go in a drug store and get a drink at a soda fountain while the others were on the outside; that ten of the jurymen went into the courtroom with the officer and took their seats in the jury box, while the other two were outside of the courtroom in a water closet; that the jury was taken to the wagon yard, and those who had horses therein were permitted to go and get feed and take it to their horses, while the others remained out of the stable and in the yard. It is further shown that the court reprimanded the officer in charge of the jury on one of these occasions. If the trial courts would request the officers to pay more attention to article 745 of the Code, and if they did not do so, inflict such punishment as would in future compel and enforce a compliance with that article, this question would not be before us so often. A few good sized fines or a few hours in jail, and the trial courts nor would we be troubled with this matter in future. That should never be an issue in a motion for a new trial, and will not be if the officers will pay attention to the mandates of the law. In a felony case, *in no event* shall one of the jury be permitted to separate from the others, unless by permission of the court, with the consent of counsel, and then such juryman must be in charge of an officer.

There is a bill complaining that the jury, during their retirement,

discussed the former conviction of appellant. It is not surprising if they did so, taking into consideration the argument had on the trial. But the evidence is very vague and indefinite as to this matter, and we will not discuss it further, trusting if it did occur on this trial, that it will not do so on the next trial.

We never like to refer to such matters, but this record, to use the vernacular of the street, shows, on the part of the private prosecution in this case, a systematic system of "gouging" from the beginning to the end of the trial. This should not and will not be tolerated. As has been said before by this court, one of the first lessons which a prosecuting officer should learn is, that the State does not expect, and much less will she tolerate, the use of any unfair means and arguments to secure the conviction of one charged with crime. If a conviction of the accused can not be had fairly, then the State does not ask and will not have the conviction, because it is tainted with, if not founded upon, injustice and wrong conduct. This man may be guilty of waylaying and assassinating his father-in-law, as the evidence for the State would tend to show, but the testimony offered in his behalf would show that he did not waylay deceased, but was on his way home, when deceased rode up on him, and that the killing took place under circumstances justifying his conduct. We hope on another trial that the issues thus made will be fairly tried and outside, extrinsic matters will be excluded, and no improper and unfair advantage will be sought to be had by counsel.

The judgment is reversed and the cause remanded.

*Reversed and remanded.* ·

PRENDERGAST, PRESIDING JUDGE.—I dissent.