GRUNDY GREEN v. THE STATE.

No. 4664.   Decided February 20, 1918.

1.—Adultery—Evidence—Husband and Wife—Withdrawal of Argument.

Where, upon trial of adultery, the State caused to be sworn and placed on the witness stand defendant's wife, and after asking some general questions as to where they had been living, etc., without objection on defendant's part, the county attorney addressed the court in the hearing of the jury, saying that the State could not use her as a witness if the defendant objected, and that he tendered her to the defendant as a witness for both sides, etc., to all of which the defendant objected. This was also alluded to in argument of State's counsel to the jury. Held, that this is reversible error, although the court by a charge withdrew these matters. Following Eads v. State, 74 Texas Crim. Rep., 628. Prendergast, Judge, dissenting.

2.—Same—Argument of Counsel—Rule Stated.

Attorneys in discussing the evidence should be careful and remain within the record, and should not use inflammatory language.

3.—Same—Circumstantial Evidence—Charge of Court.

While it would have been proper to have given the requested charge on cir-

cumstantial evidence, yet the court's charge and that refused were practically the same, and there is no error.

### 4.—Same—Evidence—Letter.

Upon trial of adultery there was no error in admitting in evidence a certain letter by appellant to his daughter, who was with appellant's wife, etc., and which could not have been harmful under any event.

### 5.—Same—Evidence—Circumstances. ·

Upon trial of adultery there was no error in admitting in evidence circumstances which compromised the defendant in his relations to the alleged adulteress. Following Roller v. State, 43 Texas Crim. Rep., 433.

Appeal from the County Court of Coryell. Tried below before the Hon. H. E. Bell.

Appeal from a conviction of adultery; penalty, a fine of five hundred dollars:

The opinion states the case.

*S. P. Sadler,* for appellant.—On question of calling defendant's wife to witness stand: Eads v. State, 74 Texas Crim. Rep., 628, 170 S. W. Rep., 145; Woodall v. State, 58 Texas Crim. Rep., 513, 126 S. W. Rep., 591; Yeiral v. State, 56 Texas Crim. Rep., 267, 119 S. W. Rep., 848; Brock v. State, 44 Texas Crim. Rep., 335.

*E. B. Hendricks,* Assistant Attorney General, for the State..

PRENDERGAST, JUDGE.—Appellant appeals from a conviction of adultery. In view of the disposition made of this case, the evidence will not be stated to any extent nor commented upon. Appellant earnestly contends that the evidence was wholly insufficient to sustain the conviction. Under the circumstances it is deemed unnecessary to decide this question.

The indictment charged that appellant, a man, on or about November 1, 1916, and continuously since then to July 19, 1917, unlawfully lived together and had carnal intercourse with Lillie Barnard, a woman, who then and there being lawfully married to another person, Mrs. Lula Green, who was then and there living.

Appellant was married to his said wife, Lula, years before, and they lived together as man and wife until about February 1, 1917. Up to that time they had five children, the oldest eleven years and the youngest about two years old. Soon after they separated his wife had another child by him.

Said Lillie Barnard was a young woman about twenty years old. For several years past she had been living with first one and another in the community, where the Greens lived, as one of the family with whom she lived, doing her part of the work, for which she got no pay except her board and clothing. In 1916 appellant's wife's health not being so good, they concluded to get, and did get, Miss Barnard to come and

live with them, as she had been then with other families. It seems by January, 1917, Mrs. Green became suspicious of improper relations between appellant and Miss Barnard. This being communicated to Miss Barnard she left the Greens and made arrangements with an old lady and gentleman, Mr. Leonard and wife, about two miles distant, to live with them in the same way that she had lived with others. Soon after this, about February 12th, Green and his wife separated. She went to her father's in Comanche County and he remained, it seems, where they had been living. She took with her their eldest girl, eleven years old, and the little boy, several years younger. Appellant himself kept said two little girls, one ten and the other five years of age. Soon after the separation he began negotiations with Miss Barnard to get her to come back to his house, do the work, attend to his children and live there with them, which she did.

It seems the house they lived in consisted of two rooms with a cage or sleeping porch added to the back one; it was claimed that Miss Barnard slept in the front room with the youngest little girl, and appellant, when it was not too cold, slept in the cage with his other little girl. That when it got too cold for this he would move his bed into the room adjoining the other and he and his child slept there. Miss Barnard moved to appellant's some time in March, 1917, and has continuously lived there with him and his two said children since then. In July, 1917, the grand jury indicted him as stated.

There are a great number of bills of exceptions. It will be unnecessary to pass upon each of them. The most material ones will be passed upon.

Appellant has several bills on the same subject. These show that the State had sworn and placed on the stand appellant's wife, who testified that she was his wife, but was then living in Comanche County with her father. That she had lived with her husband at a certain place in Coryell County; that they separated about February 12th; that she took with her when they separated and thereafter kept, two of their children and that appellant himself kept the other three. She testified to the ages and names of their several children, and that after they had separated she had born another child by appellant. Up to this time appellant made no objection to his wife being sworn and testifying what she did. Thereupon the county attorney stated to the court in the hearing and before the jury that the State could not use her as a witness if the appellant objected, and he tendered her to the defendant as a witness for both sides, and that if he desired to object to any further questions to her of the material facts because she was not a competent witness that the State did not insist on asking her further questions. Thereupon the appellant objected to the action of the court in permitting the State to use her as a witness so far as it had, and excepted to the said statement of the county attorney because he knew that she was not a competent witness against him, and it was

improper to use or offer her as a witness under the circumstances, and that the action of the county attorney under the sanction of the court so far was highly prejudicial and harmful to him. That during the argument of the case before the jury an attorney privately prosecuting referred to the testimony of his wife, and to the fact that she was tendered as a witness and that appellant would not let her testify; that she had been in attendance on the court all day and he dared not put her on the stand as a witness. Other statements in argument by this attorney in this connection were also objected to. That the county attorney in his closing argument again referred to putting defendant's wife on the stand as a witness and stated that he would not comment thereon but said that all he was going to say was that she was here and the defendant could have used her if he had wanted to. All this was objected to. The court by charge withdrew said matters and told the jury not to consider them.

Under the recent rulings of this court this shows reversible error. Eads v. State, 74 Texas Crim. Rep., 628, 170 S. W. Rep., 145, and cases there cited. (This writer did not, and does not, concur in the extent of such holding.)

Appellant has some other bills to the language used in argument by the attorneys for the State which is claimed to be inflammatory and hurtful. Of course, attorneys should be careful and stay within the record, discuss the testimony, the legitimate inferences to be drawn therefrom, and such comment of the witnesses as their testimony and the circumstances justify, but should not use otherwise inflammatory language.

Some complaint was made to the court's charge on circumstantial evidence and of the refusal of the court to give that on the subject asked by appellant. We have examined the court's charge and that of appellant refused. There is no substantial difference pointed out between the two, and we think that of the court was sufficient. It would have been proper to have given such charge in the standard form of such charges.

There was no error in the court admitting in evidence the letter of appellant to his daughter Ruby, who was with appellant's wife, dated April 2, 1917, at least that part relating to the criticisms of him. It might be well contended that the balance of this letter was in appellant's favor and not against him, not harmful to him.

Two witnesses swore that while Lillie Barnard lived at Mr. Leonard's, shortly before she removed from there back to appellant's, that they saw appellant with her in a very secreted place, which was shown to be about 100 yards from Mr. Leonard's mail box. The court, therefore, did not err in permitting Mr. Leonard and Walter Clopp to swear that Lillie Barnard frequently went to Mr. Leonard's mail box and remained about it from twenty to thirty minutes to as much as two hours. This testimony was admissible. Roller v. State, 43 Texas Crim. Rep., 433.

For the error above pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*