## J. D. JAQUITH v. ANNA DAVIDSON, *Executrix, &c.*

1. REPLEVIN; *Assessment of Value of Property; Error.* In actions of replevin commenced before a justice of the peace, it is error to assess the value of the property against the defendant at a greater amount than that sworn to by plaintiff in his affidavit. (Gen. Stat., p. 789, ₰ 62.)

2. COMPETENCY OF WITNESSES. The plaintiff having died, the suit was revived in the name of his widow, as executrix. *Held,* That she was a competent witness as to all matters except communications between herself and her husband during marriage; and further, *held,* that the adverse party was not competent to testify to any transaction or communication had personally with such deceased plaintiff, no matter in whose presence the same was had.

3. DEATH OF PARTY TO ACTION; *Presumption of Revival of Action.* Where a cause is before trial suspended by the death of one of the parties, the adverse party is not bound to presume that it will be revived, and is guilty of no negligence in waiting till the revivor is actually made before proceeding to take depositions of absent witnesses, even if depositions so taken while the action stood suspended were legal, and could be used on the trial.

### *Error from Lyon District Court.*

REPLEVIN, originally brought before a justice of the peace, by *George Davidson,* against *Jaquith,* December 16th, 1876, and thence, after a trial, by plaintiff taken to the district court. In May, 1877, said *Davidson* died, and in September, 1877, the suit was revived in the name of *Anna Davidson,* as executrix, etc. Trial at September Term, 1877, of the district court, and judgment for plaintiff. *Jaquith* brings the case here for review.

*Buck & Kellogg,* for plaintiff in error, insisted on a reversal of this case for three reasons: First, the verdict was for $60,

when the plaintiff's affidavit only called for $50; second, it was an abuse of discretion for the court below to compel defendant to go to trial within forty hours after ·the suit had been revived—seeing that defendant was then in communication with his witness, and only asked a short delay to get the deposition; third, it was error to allow Mrs. Davidson, executrix, to testify generally in the case.

1. The verdict was for one-fifth more than plaintiff claimed, and this point was made in motion for new trial, and no rebate or amendment ever offered by plaintiff below. The jury found there was no damage .for detention. We deem it an elementary proposition, that a party can recover no more than he asks in his petition, and is not entitled to a verdict. greater than he himself swears to. (Stephen on Pl., 428; *O'Conner v. Ins. Co.*, 31 Wis. 168, and cases cited; *O'Connor v. Marjoribanks*, 4 Man. & G. 435.)

2. The defendant below wanted the· evidence of only a single witness to prove a marked and material blemish in the animal at a time long before Davidson had lost his colt, and as the suit had just that day been restored to life, a temporary continuance should have been granted. From May 13, 1877, when Geo. Davidson died, till September 17, 1877, when the suit was revived, there was no suit in existence. No subpena could have been issued, and certainly no laches could be imputed to a party for not getting depositions on hand at the instant of revivor of cause. It was no uncertain thing, for the defendant below was then in telegraphic communication with his witness, and the case had never been continued before.

3. It will be admitted, that if Geo. Davidson had lived, his wife could only testify as to "transactions in which she acted as his agent." Laws 1872, pp. 334, 335; *Louis, Adm'r, v. Easton*, 50 Ala. 471; *Anthony v. Stinson*, 4 Kas. 219; 9 Gray (Mass.), 440; 11 Gray, 130; 41 Ala. 700, 704.

Every opportunity was afforded to perpetuate his testimony, or to prove what he swore to on the first two trials, and his widow was *not* the plaintiff. It was his estate which

he represented. (27 Vt. 631.) She was executrix, etc., and clearly incompetent to testify. The court below admitted her simply because she was a party, and permitted her to testify generally, and of "statements made by Jaquith in the presence of said Geo. Davidson."

Then the tables are turned. Jaquith gets on the stand, and he offers to testify to statements that Geo. Davidson made in the presence and hearing of himself and Anna Davidson, who had just left the stand, having fully unbosomed herself as to all Jaquith ever said. Then it was that the court discovered that the "adverse party was the executrix," etc., and it was not admissible under § 322 of the code—thus excluding from the jury a part of the same conversation which the executrix had just given in her own colors without let or hindrance. The executrix did not pretend to speak to any facts occurring after her husband's death.

*Cunningham & McCarty*, and *Ruggles, Scott & Lynn*, for defendant in error:

1. There is nothing in the point made by the plaintiff that our verdict is too big, even if it were true as a matter of fact; but it is not true, except that the colt for which we sued has assumed the proportions of a full-grown horse. It is not error to the prejudice of the plaintiff that we took judgment for a return of the horse, or its value, which was $10 more than when the action was commenced. The horse was not dead, nor beyond the power of the plaintiff to restore. The court knew this, and the jury knew it, for profert of the horse was made in open court at the trial. The statute says the judgment shall be for the return of the property, or the value thereof in case the property cannot be had. (See Gen. Stat., p. 663, § 185.) The primary object of replevin is to restore the specific article, and the defendant may discharge the judgment by returning the property, and he cannot discharge it by paying the value without the consent of the plaintiff, so long as it is possible to return the property *in specie;* nor on the other hand can the plaintiff

recover the value without the consent of the defendant, for the defendant has a right to return the property instead of the value. So, clearly there is no error in the judgment or verdict to the prejudice of the plaintiff in error. (*Hall v. Jenness*, 6 Kas. 363-6, and cases cited.)

2. In reply to the plaintiff's second assignment of error, we say the granting or refusal of a continuance is a matter within the sound discretion of the court, and it must appear that the court has abused such discretion before judgment will be reversed. This the court did not do, because there was no showing of diligence on the part of the plaintiff in error. The case went to the district court within ten days after December 26th, 1876, and not until some time "long enough before the commencement of this term to have had the deposition here on the first day of the term," (September term, 1877,) was there anything done relative to the getting of this deposition, except the abortive attempt when the letter was sent to Detroit and returned. During the entire eight months from January 1st, 1877, to six days before the first day of the September term for that year, not a thing was done, no effort made to ascertain the whereabouts of this witness, or procure his deposition.

Again, this plaintiff in error cannot claim anything by reason of this cause not being revived, because the statute provides that either party may revive in term time, or in vacation at chambers, and if he was not satisfied with the agreement that was made to revive, he should himself have taken the initiative and procured a formal revivor. (See Gen. Stat. 710, §§ 426, 427.)

The continuance asked would have necessarily been over the term instead of "only a short delay." There was no certainty that if time had been given, the deposition would have been obtained. Then besides all this, there was no obstacle at any time to taking depositions, whether the action was revived or not. The defendant had a right to serve notice on the executrix at any time, and proceed to take depositions. Our code is not like that of the common law in

this respect: an action never abates here. (See Gen. Stat., p. 637, § 40.) Our statute says that deposition may be taken "at any time" after the action is commenced. (See Gen. Stat., p. 696, § 347.) "At any time" certainly means at all times when there is a party entitled to revive, upon whom notice can be served. The law does not contemplate any delay on account of the death of a party. (See Gen. Stat., p. 711, §§ 436, 437.)

3. It is true that the defendant in error could not testify for or on behalf of her husband during his life in any case except when she acted as his agent, unless she had also been a party to the suit or jointly interested. (See Gen. Stat., p. 692, § 328; Laws 1872, p. 334.) But the law does not prevent a husband or wife testifying for any other party. A wife can certainly testify for the heir of her husband, real or prospective. She certainly can testify for the creditor of her husband. Now certainly the heirs and creditors are the parties in interest. If they are not the parties in interest, then certainly the executrix herself was the party in interest, and if we take either horn of their dilemma, she was competent as a witness, either on her own behalf or on behalf of the parties interested in the estate. She was no longer wife, but a widow. She never pretended to testify concerning any communication made to her by her husband, and why not allow her to testify? Jaquith was allowed to testify to all matters except just such as the statute prohibited. 16 Mo. 419; 13 Pick. 443; 40 Ga. 490; 27 Ga. 118; 11 Gray (Mass.), 129.

The opinion of the court was delivered by

BREWER, J.: This suit was originally brought before a justice of the peace by George Davidson, in his lifetime, December 16, 1876, on affidavit for replevin, alleging value at and asking for $50. This allegation of value was never changed. During Davidson's life, suit was tried before a justice of the peace, and once in district court, where Davidson had taken the case by appeal.

George Davidson died May 13, 1877, and the suit was revived September 18, 1877, in the name of present defendant in error, in her representative capacity.

Three errors are alleged:

I. Verdict and judgment were for sixty dollars, when the allegation of value and claim were only fifty dollars. The jury found the value to be sixty dollars, but awarded no damages for the detention. The matter was expressly called to the attention of the court on the motion for a new trial, but the court overruled the motion, and rendered judgment for the possession of the property, or sixty dollars, its value. This was error. The code of procedure before justices (Gen. Stat. 789, § 62) reads:

"The affidavit of the plaintiff as to the value of the property shall fix the jurisdiction of the justice so far as such value is concerned, but the value of the property shall not be assessed against the defendant at a greater amount than that sworn to by the plaintiff in his affidavit."

But if this were the only error, it could be corrected by a modification, and would not require any reversal of the judgment.

A second matter complained of, is in the admission and rejection of testimony. Mrs. Davidson, the executrix and widow of George Davidson, was called to the stand as a witness in behalf of the plaintiff, and testified generally and as to statements made by the defendant in the presence of said George Davidson, but did not testify as to any communication between her said husband and herself. The defendant thereafter offered to testify as to statements made to him by the deceased in the presence of Mrs. Davidson, but the court rejected the testimony. In this is claimed the error. It does not appear that the testimony of the two parties referred to statements made at the same time and conversation, but it is probably immaterial one way or the other. This is a matter regulated by statute, and by it the question must be decided; and though in this case it may operate harshly, we may not substitute a rule of our own for the express direc-

tion of the legislature. And this express direction seems to us clearly to sustain the rulings of the district court. The general rule is, that no one is disqualified as a witness by reason of interest as a party to the action, or otherwise. (Gen. Stat., p. 691, § 319.) With no other provision, each party would have been competent to testify as to all matters within their knowledge. The only limitation on the plaintiff, is to be found in § 1 of ch. 165 of the laws of 1872, which provides that the following persons shall be incompetent to testify: ". . . *Third,* Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during marriage, whether called while that relation subsisted, or afterward." Now Mr. Davidson being dead, she was no longer testifying for or against him. The only parties now interested on the plaintiff's side were the heirs, of whom she was one, and the creditors. In testifying, she, like any other party, testified in her own behalf; none of her testimony violated the last prohibition or pretended to touch upon any communication between herself and husband. Those communications are privileged, or rather the parties themselves may not disclose them upon the witness stand, though they are competent if they can be obtained from any other source. (*State v. Buffington,* 20 Kas. 599.) Her testimony was therefore properly received. She was not disqualified because she was a party, nor because she was a widow, except as to certain special matters, and upon them she did not offer to testify. His testimony, on the other hand, as to the statements of the deceased, was as properly rejected. Gen. Stat., p. 691, § 322, provides that—

"No party shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, . . . of such deceased person, where they have acquired title to the cause of action immediately from such deceased person."

That covers this case exactly. The testimony sought to be introduced was communications had personally between a deceased person and the party. The adverse party was the executrix of such deceased person, and as such executrix she derived title to the cause of action immediately from her testator. Many words could not make this plainer. The court decided in accord with the plain commands of the statute, and therefore did not err.

We have noticed these matters, notwithstanding the fact that in the remaining question we think there appears error which compels a reversal, because their decision may assist in the future trial. That remaining question is involved in the ruling of the court upon an application for a continuance. Matters of continuance are, as has been often said, largely within the discretion of the trial court, and it must clearly appear that substantial wrong has been done a party in a ruling thereon before a reversal of a judgment will be ordered. In the case at bar, while the writer of this opinion does not think such wrong clearly shown, yet his brethren are of the opinion that upon the showing made the defendant was entitled to a continuance, and that it was material error to refuse it.

The facts are, that the case was forced to trial on the 19th of September, the day after the revivor. Postponement was sought, to obtain the deposition of the nephew of defendant, whose testimony would, as shown by the affidavit for postponement, have been competent and material. An effort had been made to obtain the deposition of this witness at Detroit, but the notice therefor forwarded to Detroit had been returned unopened. Whether this was before the death of Davidson, we are not advised; but probably it was, as the affidavit showed that the witness had been for some months a resident of Toledo, having removed thither from Detroit. While the action stood suspended by the death of Davidson, a second effort had been made to take the deposition at Toledo. Notice therefor was mailed on September 8th, the deposition to be taken on the 15th. No deposition arriving,

a telegram was sent to Toledo, inquiring the cause, to which a reply came from the witness, stating that he had been temporarily absent from the city, and requesting a new notice. From the showing, it would seem clear that the whereabouts of the witness was known, that he was willing to give his deposition, and that in all probability it could be obtained in a few days. Under those circumstances, the court is of the opinion that the party had used due diligence, that the testimony was competent and material, and that the party was entitled to a postponement in order to obtain it. We do not understand that a party is under obligations to take depositions while a case stands suspended by the death of the adverse party, even if depositions so taken could be considered as legally taken and properly used on the trial. But *quære:* Are such depositions legally taken? Is there any party or attorney upon whom notice therefor can legally be served? Is not such a deposition a purely *ex parte* proceeding? He is not bound to presume that a revivor will be had, and may wait until the revivor is actually made before himself taking any steps in the case. After the revivor in the case at bar, the defendant had no time to obtain this testimony, and it does not appear that he was lacking in diligence in not obtaining the deposition before the death of the adverse party. For these reasons, the court is of the opinion that it was error to overrule the application for a postponement, and compel the defendant to go to trial without such testimony, and in the judgment of a majority of the court the error is of sufficient moment to compel a reversal.

The judgment of the district court will therefore be reversed, and the case remanded with instructions to grant a new trial.

All the Justices concurring.