### CHARLEY RICHARDS v. THE STATE.

#### No. 4591. Decided February 10, 1909.

**1.—Theft of Cattle—Evidence—Husband and Wife—Confidential Communications.**

The authorities are practically harmonious to the effect that confidential communications between husband and wife are not admissible, either during coverture or after the dissolution of the marriage relation; but the authorities are practically harmonious to the effect that communications or statements made between the husband and wife in the presence of others are not privileged.

**2.—Same—Case Stated.**

Where upon trial for theft of .cattle, the court excluded the testimony of the wife with reference to statements made by her husband (the defendant) during their marital relations, made in the presence of others in a general

running conversation about the alleged stolen animal, over the objection of the defendant, the same was reversible error. Following Cole v. State, 51 Texas Crim. Rep., 89.

### 3.—Same—Evidence—Impeaching Witness.

Upon trial for theft of cattle, the court erred in admitting the fact of a prior conviction of defendant's witness, which had occurred some eighteen or twenty years prior to the time he had testified in the case; as a means of impeaching him.

### 4.—Same—Charge of Court—Claim in Good Faith.

Where upon trial for theft of cattle there was evidence that the defendant owned the animal in question, either as his own or in partnership with the prosecutor; that he claimed the same in good faith, etc., the court erred in failing to charge upon this issue.

### 5.—Same—Charge of Court—Fraudulent Intent.

Where upon trial for theft of cattle there was evidence that the defendant had authority to sell the animal in question and pay himself for his services, he would not be guilty of theft even if he did sell the animal and used all the proceeds, unless at the time of the original taking he took the animal with a fraudulent intent to convert it to his own use; and the court should have submitted this issue.

Appeal from the District Court of Bosque. Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. P. Wood* and *W. F. Schenck,* for appellant.—On question of good faith: Welsh v. State, 42 Texas Crim. Rep., 338; 60 S. W. Rep., 46. On question of impeachment: Club v. State, 14 Texas Crim App., 192.

*F. J. McCord,* Assistant Attorney-General, and *E. B. Robertson,* County Attorney, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for cattle theft, his punishment being assessed at two years confinement in the penitentiary.

While the witness Mrs. W. H. Gibbons, formerly the wife of the prosecuting witness, W. H. Gibbons, was testifying, she was asked, in substance, the following question by appellant: "I will ask you if you remember on or about January, 1908, that Charles Richards and Henry McFadden and your husband were all at your home, on a certain day about that time, and Charley Richards told Billy Gibbons to keep a lookout for a certain red cow of his that had got out of his pasture down here (the Alexander pasture) and in that same conversation I will ask you if he did not tell him that the cow was a red cow and branded with a T on the shoulder, and S on the left thigh, and I will ask you, if Mr. Gibbons did not promise he would do so?" All of these questions and all an-

swers that might be made to them, were objected to by the State, because they were immaterial and irrelevant, and further on the ground that, under article 774 of the Code of Criminal Procedure, the wife can not testify to any declarations made by the husband in contradiction of him during the existence of the marital relation; and also that it was a self-serving statement of Mr. Richards and too remote, etc. It was shown at the time mentioned, January 8, 1908, that witness was the wife of the prosecuting witness (Gibbons) and at that time was living with him as his wife. The court sustained the objection and the testimony was not permitted to go before the jury, the court holding at the time that from the witness' statement she was at the time of the conversation, the wife of the prosecuting witness (Gibbons) and was living with him at that time as his wife and any statement made by him to her or in her presence, under the case of Roach v. State, 41 Texas, 261, and Club v. State, 14 Texas Crim. App., 192, was inadmissible, and that the declarations of Charley Richards (appellant) would be inadmissible because they were self-serving declarations. The reasons are then stated why the court should have admitted the evidence and the purpose, etc., in the bill of exceptions. The bill further recites that the witness, had she been permitted, would have answered all these questions in the affirmative. The court allows this bill with the explanation that Henry McFadden was examined as a witness for the defendant and testified to the same conversation as Mrs. Gibbons would have testified. We are of opinion that the court was in error. Article 774 of the Code of Criminal Procedure interdicts the admission of confidential communications between the husband and wife, during or after the dissolution of the marriage. These statements were not confidential communications. They were made in the presence of others in a general running conversation, and were not of a confidential nature. This question almost identically stated, was ruled favorably to appellant's contention in Cole v. State, 51 Texas Crim. Rep., 89. The authorities are practically harmonious to the effect that confidential communications between husband and wife are not admissible, either during coverture or after the dissolution of the marriage relation; but the authorities are practically harmonious to the effect that communications or statements made between the husband and wife, in the presence of others, are not privileged. Com. v. Griffin, 110 Mass., 181; State v. Hoyt, 47 Conn., 518. Statements of one spouse to the other in the presence of third persons may be proved by such persons. Rex v. Simons, 6 Car. & P., 540; Hopkins v. People, 127 Ill., 507; Shuman v. Supreme Lodge, 110 Iowa, 480; Jackquith v. Davidson, 21 Kan., 341; Bank v. Hutchinson, 62 Kan., 9; State v. Gray, 55 Kan., 135; Fay v. Guynon, 131 Mass., 31; Long v. Martin, 152 Mo., 668; 34 S. W., 473; People v. Hayes, 140 N. Y., 484; 23 L. R. A., 830; Toole v. Toole, 109

N. C., 615; Allison v. Barrow, 3 Cold., 414; Queener v. Morrow, 1 Cold., 123. These authorities support the decision of Cole v. State, supra. The same rule is laid down by Mr. Greenleaf in the first volume of his valuable work on evidence, under sections 337-8, and numerous authorities cited in the notes under these sections. We are therefore of opinion that the court was in error in excluding this testimony, inasmuch as they were not confidential communications.

We are further of opinion that the court erred in admitting the fact of a prior conviction of the witness McFadden as a means of impeaching him as a witness. The conviction occurred some eighteen or twenty years prior to the time he testified in this case. Under numerous decisions by this court, this conviction was too remote to be used as evidence for impeaching purposes.

There are several errors assigned in regard to the charge given, and the refusal of the court to give charges requested by appellant, which also requires a reversal of the judgment. Appellant claimed and introduced proof to the effect that the cow killed was his property; that he had bought and paid for her; that he had her in his lot, and that he and his wife milked her for quite a length of time. It was rather a serious question, with evidence pro and con, as to the identity of this animal. Appellant claimed that he owned the cow at the time the alleged owner Gibbons owned a similarly colored cow, and that there were in fact two cows, appellant owning one and Gibbons the other. There was evidence also to the effect that appellant and Gibbons had bought fifty or sixty head of cattle in the same brand as was upon this cow. Appellant relied upon this question also, as being partner, or interested in the cattle, he therefore could not be guilty of theft in disposing of one of them. There was evidence also to the effect that appellant had the right to control Gibbons' cattle and sell them, paying himself for his services and turning over the remainder of the proceeds from their sale to Gibbons. There was evidence also to the effect that appellant was employed by Gibbons to get up his cattle for which Gibbons was to pay him a stipulated price per head for those he should find. Without going into the details of the testimony bearing upon these issues and incumbering this opinion with all these facts, we are of opinion these questions should be submitted to the jury in the charge of the court upon another trial. If appellant owned the cow he had a right to sell her, either as his own cow or as a partnership cow with Gibbons. If appellant had the authority to sell the cow and pay himself for his services, and did sell Gibbons' cow and used all the money, it would not be theft of the cow, unless at the time of the original taking, he took the cow with the intent then to fraudulently convert her to his own use. Where the original taking was not fraudulent, no subsequent appropriation of the property taken would constitute theft. The fraudulent intent must

exist at the time of the taking. The same may be said, and the same reason apply to the other phases of the case, to wit: if appellant was hired to take up the other cattle for which he was to be paid a certain amount, and did take up the cattle for Gibbons, but after doing so, sold the cow in question—conceding it was Gibbons' property, then he would not be guilty, unless the fraudulent intent existed, to convert her to his own use at the time of the original taking. These matters, as here presented, will indicate to the trial court, sufficiently, how the issues of the case, as made by the facts, should be presented to the jury upon another trial. Some of these questions were not given in charge to the jury and the matters are properly presented for review.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*