### Jim Vickers v. State.

No. 2097.   Decided December 11, 1912.

Rehearing denied March 19, 1913.

**1.—Incest—Accomplice—Corroboration.**

Where, upon trial of incest, the State established its case by the testimony of the prosecutrix, which was corroborated by the fact that the defendant made an effort to produce an abortion on prosecutrix and also attempted to commit suicide, etc., the corroboration of the accomplice testimony was sufficient.

**2.—Same—Evidence—Husband and Wife.**

Where, upon trial of incest, the State was permitted to introduce the former wife of defendant to prove by her that during their marriage and at the time of the alleged offense, she was pregnant, to convey the idea that defendant would not probably have sexual intercourse with her at that time, but would be more likely to have such intercourse with his step-daughter, the same was reversible error. Articles 774 and 775, Code Criminal Procedure. Distinguishing Cole v. State, 51 Texas Crim. Rep., 89; Richards v. State, 55 id., 278.

**3.—Same—Former Marriage—Bastard—Presumption.**

Where, upon trial of incest, it appeared that defendant had been married prior to his marriage to the mother of prosecuting witness and there was no evidence that the former wife was dead or the marriage had been legally dissolved, the conviction could not be sustained. The fact that defendant had a son when he married the second time, would not raise the presumption that the latter was a bastard. Following McGrew v. State, 13 Texas Crim. App., 340.

**4.—Same—Evidence—Opinion of Witness.**

The opinion of a witness that someone else than defendant might be the father of the child of the prosecuting witness was inadmissible.

**5.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.**

Upon trial of incest, where State's counsel called attention to the fact that no one was present when the alleged act of intercourse occurred than the defendant and prosecuting witness, and further stated that the act did take place and that no one denied it, this was an allusion to defendant's failure to testify, and was reversible error.

Appeal from the District Court of Williamson.   Tried below before the Hon. C. A. Wilcox.

Appeal from a conviction of incest; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

J. F. Taulbee and Richard Critz, for appellant.   On question of corroboration: State v. Willis, 9 Iowa, 582; Gillian v. State, 3 Texas Crim. App., 132.

*C. E. Lane,* Assistant Attorney-General, and *Jas. R. Hamilton,* District Attorney, and *Nunn & Love,* for the State. On question of testimony of former wife: Ex Parte Fatheree, 31 S. W. Rep., 403, and other cases; Nance v. State, 17 Texas Crim. App., 385.

On question of argument of counsel and allusion to defendant's failure to testify: Lancaster v. State, 36 Texas Crim. Rep., 16; Smith v. State, 55 Texas Crim. Rep., 563, 117 S. W. Rep., 966; Lochlin v. State, 75 S. W. Rep., 305; Bruce v. State, 53 S. W. Rep., 867; Wilkerson v. State, 57 S. W. Rep., 956; Davis v. State, 44 S. W. Rep., 1099; Wingo v. State, 75 S. W. Rep., 29; Jones v. State, 50 Texas Crim. Rep. 329, 96 S. W. Rep., 930.

HARPER, Judge.—Appellant was prosecuted and convicted of the offense of having carnal knowledge of his stepdaughter, Miss Ollie Walston, and his punishment assessed at five years confinement in the penitentiary.

Appellant earnestly insists that the testimony of the prosecuting witness is not sufficiently corroborated to sustain the conviction. We have carefully reviewed the testimony. Her testimony makes a clear case, and we are of the opinion that the testimony of Dr. Stone, who says he sold the appellant the medicine which the prosecuting witness says appellant delivered to her to produce an abortion and miscarriage, the fact that he attempted to commit suicide, as he said he told her he would if she told about the matter, and the conversation testified to by the witness, Arthur Walston, would support the verdict, although it would be more satisfactory if the testimony would show that in fact the medicine sold by Dr. Stone to appellant and by him delivered to prosecuting witness, was in fact calculated to produce a miscarriage. However, we do not think the testimony of Mrs. Ella Vickers, the wife of appellant, ought to have been admitted in evidence. It is true that at the time she testified she had been divorced, but the matter in regard to which she testified took place while she was the wife of appellant. It is also true that the matters in regard to which she testified on direct examination might be said to be collateral matters, but the defendant's theory was, that there was a collusion between Mrs. Vickers and her two children to run appellant off, and the defendant proved that subsequent to the separation Mrs. Vickers had deeded Arthur Walston certain lands, and intended to deed the prosecuting witness certain lands. This was introduced to affect their credit as witnesses. The testimony of Mrs. Vickers would show there was no such agreement, and the land, although in appellant's name and purchased after his marriage, was in fact paid for with funds belonging to the community estate of her first marriage, and therefore it was proper for her to make the deeds. This testimony was introduced to strengthen the testimony of the two main witnesses for the State, and is it permissible to prove by the wife facts which will support the witnesses against her husband? Article 775 of the

Code of Criminal Procedure provides: "The husband and wife may in all criminal actions be witnesses for each other, but they shall in no case testify against each other, except in a criminal prosecution for an offense committed by one against the other." And Article 774 provides that this inhibition continues after the marriage relation ceases as to matters taking place during the married relation. In Sec. 983 of White's Ann. Code of Crim. Proc. will be found a long list of authorities, which hold that Mrs. Vickers should not have been permitted to testify in this case. The State had an object and purpose in introducing her as a witness, and we can not now be permitted to say that her testimony was immaterial, and therefore no ground for reversal. In fact, the purpose is plainly manifest, which was to strengthen the testimony of Ollie and Arthur Walston, and on these two witnesses the State must rely for a conviction.

Again, it appears that appellant had been married prior to his marriage to the mother of the prosecuting witness, the present Mrs. Vickers. There is no evidence that the former Mrs. Vickers was dead or appellant had secured a divorce from her. Where it affirmatively appears that the defendant had been married prior to the marriage to the mother of the prosecuting witness in an incest case, it should also affirmatively appear that the first marriage had been legally dissolved by death or otherwise. (McGrew v. State, 13 Texas Crim. App., 340.)

There was no error in excluding what Arthur Walston told defendant about another might be the father of the child of the prosecuting witness. What Arthur Walston's opinion may have been in the premises would not be legitimate testimony. Neither do the other bills in regard to admitting testimony present any error.

In bill No. 5 it is shown that W. H. Nunn in addressing the jury said: "They tell you the prosecuting witness has not been corroborated—they will tell you no one saw the act of intercourse except the two (prosecutrix and defendant). 'Tis true that no one was present at the act of intercourse but these two; 'tis true that Ollie Walston testifies that no one was present when the defendant told her to take the turpentine except herself and the defendant, but gentlemen, she has testified to both of these transactions, and they have not dared to put a witness on the stand to contradict her testimony in any particular." These remarks were excepted to, and if they do not challenge the attention of the jury to the fact that defendant had not testified, we are unable to understand the English language. Prosecuting officers should not thus seek to indirectly call the attention of the jury to the fact that a defendant has not testified in the case. This is a right given in law, but he is not bound to avail himself of that privilege, and if he is willing to rest his case on the weakness of the State's case he has a right to do so.

The court did not err in refusing to quash the indictment. The indictment is drawn in terms frequently approved by this court.

There are many assignments in the motion for new trial, and we have carefully reviewed each, and none of the others present error, but on account of the errors above pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

ON REHEARING.

March 19, 1913.

HARPER, JUDGE.—The State has filed a motion for rehearing in this cause, and first insists that we erred in holding that the testimony of Mrs. Vickers was inadmissible, and cites us to the cases of Cole v. The State, 51 Texas Crim. Rep., 89, 101 S. W. Rep., 218; Richards v. The State, 55 Texas Crim. Rep., 278, 116 S. W. Rep., 587, and in those cases it may be said that in construing the statutes relating to the wife testifying against her husband, it is apparently held that after the marriage relation ceases, the divorced wife may testify to anything that took place while the marriage relation existed, except such matters as were of a confidential nature.

Article 795, Revised Code Criminal Procedure reads: "The husband and wife may, in all criminal actions, be witnesses for each other; but they shall, in no case, testify against each other, except in a criminal prosecution for an offense committed by one against the other."

This court has strictly construed this statute, and held that while the marriage relation *continues to exist* the State can not call the wife as a witness in any case, except where he is being prosecuted for an offense against her, and in the case of Compton v. The State, 13 Texas Crim. App., 271, Judge White in a well considered opinion, held that under this provision of the Code the wife was not a competent witness in the prosecution for incest against her husband, and this opinion has been adhered to by this court since its rendition. In that case the wife had not been divorced, and counsel may well contend that it does not apply, as Mrs. Vickers had been divorced at the time she was offered as a witnesss in this case, and this brings her under the law as announced in Article 794, Revised Code Criminal Procedure, which reads: "Neither husband nor wife shall, in any case, testify to communications made by one to the other, while married; nor shall they, after the marriage relation ceases, be made witnesses as to any such communication made while the marriage relation subsisted, except in a case where one or the other is prosecuted for an offense; and a declaration or communication made by the wife to the husband, or by the husband to the wife, goes to extenuate or justify an offense for which either is on trial." In construing this article of the Code in the Cole case and Richards case, supra, this court seems to have held that after the marriage relation has ceased to exist it is the "confidential communications" which are inhibited

by the statute, and that the wife, after divorce, may testify to anything that occurred while the marriage relation existed, not of a confidential nature, it being specially so decided by Presiding Judge Davidson in the Richards case, hereinbefore referred to, and which opinion we have recently followed and adhered to.

In this case Mrs. Vickers testified: "My name is Ella Vickers; I live out on the San Gabriel River—on the North Gabriel, on the old Vickers place. My maiden name was Milligan. I have been married twice. W. R. Walston was my first husband. He died in Burnet County, about a mile and a half from Fairland. He died in 1898, I believe. He left an estate; he left a farm up there. We sold the farm and divided it with the heirs; let the heirs have their part, and then we took what was left and put part of it in the old Vickers place, the one we now live on. There were some legal proceedings had for the purpose of selling this property; the court sold the property. The first payment on the Vickers place came out of a land note from the other place. When I married the second time I was married in North Georgetown, at Cobb's residence. Jim Vickers was my second husband; that man there (points to defendant). Ollie Walston is my daughter by my first husband. My youngest child was thirteen months old yesterday. Ollie Walston has a child; her child was eight months old the 13th of this month. As to my condition during the month of January, 1911, as to being pregnant or not,—I will say that I was getting kinder helpless. What I mean by that is that I was pregnant; I was in what is known as a family way." In the original opinion we may have stated the law too broadly to make it clear that we did not intend to overrule nor limit in any degree the rule announced in the Richards and Cole cases, and authorities therein cited. If the language in the original opinion can be so construed, it is withdrawn. However, we are still of the opinion that all this testimony was not admissible, and in so holding we do not think it in anywise conflicts with those cases. Appellant was being prosecuted for having had carnal intercourse with his stepdaughter in January, 1911, and we do not think it was permissible to show by the wife that she at that time was pregnant. What was or could be the purpose in eliciting this testimony? Only to show that appellant's wife was in such condition he could not and probably would not have sexual intercourse with her at this time, and therefore would the more likely be guilty of having sexual intercourse with some other woman, —his stepdaughter. This, we think, is permitting the State to invade too far the privacy of the marriage relation existing between the husband and wife,—to prove such facts by either as evidence against the other. As to the details of the land transaction, in this we may be in error, and this is the part of the original opinion withdrawn.

The State again insists that we were in error in holding that as the record showed that appellant had a son prior to his marriage to the prosecuting witness' mother, that it also ought to have been proven

that his former wife was dead and he had been divorced from her. The McGrew case cited in the original opinion so announces the law, and we have found no decision holding otherwise. The case cited by the State, Nance v. The State, 17 Texas Crim. Apps., 385, merely holds that proof of the fact that a woman had a daughter at the time she married Nance, was no evidence that she had ever been married. But is this also true of a man? Can he legally have a son without having been married? The law recognizes the child of a woman before marriage as her child, but not so as to a man. Such child could not inherit from the man, but could from the mother. While some may cavil as to this distinction in law, and think it should be changed, but so long as it is the law, it must be respected and obeyed.

The other contention, that we erred in holding that it was error for the prosecuting officers to refer to defendant's failure to deny that he had sexual intercourse with his stepdaughter, after careful and thoughtful study of the record, and the law applicable thereto, we are more thoroughly convinced, if anything, that this was such error, as it alone ought to result in a reversal of the case. In this case the State's counsel called attention to the fact that no one was present when the act of intercourse took place (if it did take place) other than the prosecuting witness and appellant; that the prosecuting witness swore positively that it did take place, and appellant did not deny it. Language could not be used that would more forcibly impress that fact on the jury's mind, and it apparently was done to aid in securing a conviction of defendant. The corroboration of the prosecuting witness was perhaps sufficient to sustain the conviction, if fairly obtained, but it is not of that cogent force that a jury would not have been justified in finding otherwise. And under such circumstances the State can not be permitted to obtain a conviction by illegitimate and questionable methods.

The motion for rehearing is overruled.

*Overruled.*