JASPER A. LANKFORD v. THE STATE.

No. 5526. Decided June 2, 1920.

**1.—Incest—Husband and Wife—Conduct of Prosecuting Attorney.**

Where, upon trial of incest, the defense only introduced one witness, who testified that the condition of prosecutrix might have been brought about by masturbation, and there was no other direct testimony for the State except that of the prosecutrix, it was reversible error to call the wife of the defendant as a State's witness, although she was not used as such witness, and during the examination of defendant's witness to ask him on cross-examination if he had not told the wife of the defendant that her daughter was a good girl and had not had frequent penetrations, which defendant's witness denied, and to permit the district attorney, in his argument, to say that the wife had not been used as a witness. Following Moore v. State, 45 Texas Crim. Rep., 234.

**2.—Same—Allusion to Defendant's Failure to Testify.**

Where the record on appeal showed that there was no one present when the alleged incest took place, except prosecutrix and her father, the defend-

ant, the argument of State's counsel that defendant was content to sit still and rely on his plea of not guilty alone and put no witnesses on the stand except the doctor, the same was reversible error. Following Vickers v. State, 69 Texas Crim. Rep., 628, and other cases.

Appeal from the District Court of Hood. Tried below before the Honorable J. B. Keith.

Appeal from a conviction of incest; penalty: two years imprisonment in the penitentiary.

The opinion states the case.

*Thompson, Barwise, Wharton & Hiner*, for appellant.—On question of district attorney calling defendant's wife as witness: Compton v. State, 13 Texas Crim. App., 271, and cases cited in opinion.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment charged appellant with having committed incest with his daughter on the 19th day of July, 1918. Her testimony is to the effect that on that day they went from their residence in Hood County to the town of Cleburne to place her in a sanitarium to have one of her ovaries removed by surgical operation. They went in a one horse buggy. Upon reaching a certain gate her father got out of the buggy to open the gate, and while at the gate he assisted her out of the buggy. They went behind it and stood up in the middle of the road and had intercourse in that position. To this she says she did not consent. Her testimony further indicates that she protested to her father. She says her father was six feet tall while she was only five feet in height. When this occurred they went to the town of Godley in Johnson County. After reaching the town she communicated this matter to a Mrs. Shotwell and Dr. Yeater. Dr. Yeater examined her. The substance of this testimony is that her private parts showed to be enlarged as if they had been accustomed to being penetrated, and he found a dried substance upon her drawers which he took to be seminal fluid. He made no microscopical examination of it, and could not tell whether it was or was not a seminal discharge, and that it could only be determined by the use of the microscope. Dr. Dabney also testified with reference to this matter. These physicians agree in their testimony that the character of this substance could not be determined otherwise than by a microscopical examination, and that it could by this means be determined. They both testified that a discharge from the private parts of the girl would make the same impress and would have about the same appearance as seminal fluid. That there might be a slight difference in color and effect, but the difference could not be told without the investigation mentioned. This investigation was not made, and when the defendant purposed

to have it made the State's prosecuting officers declined to permit it. A brother of prosecutrix went to the point that she indicated as the place of the intercourse to examine to see if foot tracks could be found in the road at that point. His testimony is to the effect that there was nothing to indicate such foot prints, and he found no evidence of them at the place pointed out by the girl. The father took her from Godley to Cleburne and placed her in a sanitarium. The operation was not performed. There is evidence that she was given to masturbation and had been for a long time. This she admitted, and also evidence that long continued masturbation produces weakness of the mind, weakness of the body, and sometimes insanity in some form or another, and especially produces hallucinations in which the masturbator would imagine things occurred which in fact did not occur. There is a great deal of testimony describing the effect of masturbation, which we deem unnecessary to state.

It is also reserved for revision that after the jury had been empaneled the wife of defendant was called by the State and sworn as a State's witness. She was not used as a witness by the State. During the examination of Dr. Dabney, the only witness placed upon the stand by the defendant, and upon cross-examination he was asked if he had not told the wife of the defendant that her daughter was a good girl and had not had frequent penetrations. This the doctor denied. The wife was not offered as a witness, but the matter was left in that condition. The doctor had testified that the girl was confirmed in her maturbation habits and gave various reasons and facts and circumstances for his conclusion, and this was substantiated to some extent by admissions of the girl herself. During the argument the district attorney adverted to the fact that the wife was there as a witness and could have testified but the defendant did not see proper to place her upon the witness stand. As a general proposition, the State may take advantage in argument of the fact that the wife knew facts, and it was within the power of appellant to place her upon the stand and he did not do so. There is another line of decisions, however, that the State cannot use the wife's testimony against her husband, nor use her as a witness. There is another rule of law thoroughly recognized that where a fact is not authorized to be shown directly, it cannot be introduced by indirect means. The same rule that would exclude the direct testimony would also exclude the indirect testimony to prove the same fact. In Moore v. State, 45 Texas Crim. Rep., 234, the district attorney placed the wife upon the stand as a witness and proved by her that the defendant had married her, the substance of all of which was that he had so married her to prevent her testifying against him, as she had been prior to his marriage an important State witness. Objection was urged to all this, and she was tendered as a witness to the defendant. The judgment was reversed. For a discussion of that question see the opinion in that case. That case has been some what modified by sub-

sequent opinions, but they all seem to follow the first line of opinions above mentioned, that is, that the State may take advantage of the failure of defendant to place his wife on the witness stand, and discuss that matter before the jury. If the subsequent cases are thought to modify the Moore case, *supra,* to that extent, they are correct, but that rule does not apply in a case where the facts and circumstances are as depicted by this record. The girl placed her mother in such position that she knew nothing of these transactions. She had not before informed her of the conduct of her father. Of course, after the last transactions became public the wife would know about it. It was not contended that the wife knew only of the facts and circumstances concerning either of the transactions, and it seems that the State desired to place defendant in the attitude of refusing to permit her to testify by placing her in the attitude where she could contradict or sustain Dr. Dabney. Of course, the State could not place her upon the stand to contradict Dr. Dabney, and defendant did not and whether she was his wife or not, the defendant was justified in reaching the conclusion that it was not necessary because Dr. Dabney denied making such statement. If the State had any legitimate testimony by which it could prove Dr. Dabney had made such statement to appellant's wife, they might use such testimony, but could not use the wife's evidence for that purpose. They did not offer her as a witness, but simply left the matter in that condition. Upon another trial these things should not occur.

In this connection the district attorney, among other things, in his argument stated: ''But instead of putting his good wife on the stand he was content to sit still and rely in this case solely and alone on his plea of not guilty and put no witnesses on the witness stand except Dr. Dabney.'' This is a quotation from the speech. Objection was urged to this speech because it was an allusion to the failure of defendant to testify. We are of opinion this contention is correct. There was no one present, under the girl's testimony, except herself and her father. There was no other witness who could testify as to those immediate facts. Dr. Dabney was the only witness placed upon the stand, and enough of his testimony has been mentioned to show why he became a witness. This court in Vickers v. State, 69 Texas Crim. Rep., 628, 154 S. W. Rep., 578, said:

''They tell you the prosecuting witness has not been corroborated; they will tell you no one saw the act of intercourse, except the two. 'Tis true that no one was present at the act of intercourse but these two; 'tis true that Ollie Walston testifies that no one was present, when the defendant told her to take the turpentine except herself and the defendant; but, gentlemen, she had testified to both of these transactions, and they have not dared to put a witness on the stand to contradict her testimony in any particular.'' Judge Harper, writing the opinion, said:

''These remarks were excepted to, and if they do not challenge the attention of the jury to the fact that defendant had not testified we

are unable to understand the English language. Prosecuting officers should not thus seek to indirectly call the attention of the jury to the fact that a defendant has not testified in the case. This is a right given in law, but he is not bound to avail himself of that privilege; and if he is willing to rest his case on the weakness of the State's case, he has a right to do so.''

On rehearing Judge Harper uses this language: ''The other contention, that we erred in holding that it was error for the prosecuting officers to refer to defendant's failure to deny that he had sexual intercourse with his step-daughter, after careful and thoughtful study of the record and the law applicable thereto, we are more thoroughly convinced, if anything, that this was such error as it alone ought to result in a reversal of the case. In this case the State's counsel called attention to the fact that no one was present when the act of intercourse took place, if it did take place, other than the prosecuting witness and appellant; that the prosecuting witness swore positively that it did take place and appellant did not deny it. Language could not be used that would more forcibly impress that fact on the jury's mind, and it apparently was done to aid in securing a conviction of defendant.'' The following cases may be cited in support of this conclusion: Miller v. State, 45 Texas Crim. Rep., 517; Williams v. State, 48 Texas Crim. Rep., 75; Flores v. State, 60 Texas Crim. Rep., 25, 129 S. W. Rep., 1111; Wallace v. State, 46 Texas Crim. Rep., 341, 81 S. W. Rep., 966; Dawson v. State, 24 S. W. Rep., 414; Barnard v. State, 48 Texas Crim. Rep., 111, 86 S. W. Rep., 760; Washington v. State, 77 S. W. Rep., 811; Wingo v. State, 75 S. W. Rep., 29; Shaw v. State, 57 Texas Crim. Rep., 474, 123 S. W. Rep., 691.

For the errors discussed the judgment will be reversed and the cause remanded.

*Reversed and remanded.*