## Alfonso Cole v. The State.

No. 6813.   Decided June 14, 1922.

Rehearing Denied October 11, 1922.

### 1.—Murder—Husband and Wife—Evidence—Practice in Trial Court.

While it was proper for the State to show what relation had existed between the defendant and a certain woman prior to the association between him and deceased; that immediately preceding the killing his attentions towards said woman had been renewed, and that since the killing he had married her, and that he had told a witness that he had married said woman to kill her evidence, yet it was error to permit the State to show either directly or indirectly that this woman had, prior to the marriage, testified to facts against him.

### 2.—Same—Argument of Counsel—Husband and Wife.

Where it is not shown that the woman whom defendant married after the homicide had been present at the place of the killing, the State's counsel should not have been permitted to criticise the defense for not calling her as a witness, as she could not have been called to testify to any facts communicated to her husband, although he may have married her for the express purpose of suppressing her testimony. Following Miller v. State, 37 Texas Crim. Rep., 575.

### 3.—Same—Argument of Counsel—Declaration of Third Party.

The District Attorney should not have been permitted in his argument to state that a certain party told him that he made defendant marry a

certain woman after the homicide to suppress her testimony at the trial— there being no basis in evidence for such argument. Following Stanchel v. State, 89 Texas Crim. Rep., 368.

### 4.—Same—Case Stated—Husband and Wife—Rule Stated.

The case properly developed failing to show the wife in such position as to know any fact relative to the killing, the State proved independently that she was a witness to facts against the defendant, and then sought advantage by commenting on her failure to testify upon the instant trial, there was reversible error, as the effect of this proceeding was to indirectly make her a witness against her husband. Following Lankford v. State, 87 Texas Crim. Rep., 435, and other cases.

### 5.—Same—Evidence—Declarations of Defendant.

Testimony as to certain conduct of defendant toward deceased, three or four years before her death, which was objected to as too remote, said objection went to the weight of the evidence, rather than to its admissibility.

### 6.—Same—Rehearing—Practice on Appeal.

Where the motion for rehearing calls attention to no part of the court's opinion which is deemed contrary to law, etc., the same will be overruled.

Appeal from the District Court of Smith. Tried below before the Honorable J. R. Warren.

Appeal from a conviction of murder; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*Bullock & Ramey*, for appellant.—On question of Husband and Wife and Argument of State's Counsel: Stalling v. State, 234 S. W. Rep., 914; Norwood v. State, 192 id., 254; Dunn v. State, 212 id., 511; Green v. State, 201 id., 182;

*R. G. Storey*, Assistant Attorney General, for the State.

HAWKINS, JUDGE.—From a conviction of murder, with a penalty of forty years in the penitentiary this appeal is taken.

Elnora Bell, the deceased, an unmarried woman, and appellant had been living together for three or four years. Prior to their familiarity, the evidence indicates that appellant had borne the same relation with one Lena Cheesborough. A few days and nights immediately before the homicide appellant appears to have spent the greater portion of his time with the Cheesborough woman, who lived about a mile and one-half from the house where appellant and deceased were staying. He left the house of the former on Wednesday morning, and that night Elnora Bell was killed by a pistol shot. Appellant's two sons lived with him, but were at a nearby neighbor's at the time the pistol shot was heard, no one being present at the time but appellant and deceased. A few minutes after the shot her body was found at the rear of the house. She was entirely nude with

the exception of a shirt or vest which came down to about her waist. The shot entered near the center of the back, passing out the front of her body a few inches lower than the point of entry. Appellant claimed the killing to have been the result of an accident. He did not testify upon the trial, but related to others before his arrest; that he had retired, and had laid his pistol in a chair near the bed; that a woman's garment of some kind was over the back of the chair extending down upon the seat, and upon this he placed the pistol; that deceased pulled the garment off the chair causing the pistol to fall and discharge killing deceased. He pointed out to parties where the ball had passed through one door and into another after traversing her body. The State adopted appellant's statements as true that the same shot that caused deceased's death also passed through and into the doors, but disputed the fact that an accidental shot discharged as appellant claimed could have been responsible for it, and contended that appellant fired the shot, either sitting up in the bed, or on the side of it. Proof was introduced by the defense that the holes in the door were made by the accidental discharge of a gun long before the time of the killing. Apparently disinterested parties testified they had observed the holes before that date, and gave the reasons why their attention was directed to them. This proof combatted the State's theory, but also disputed the explanation made by appellant soon after the killing. There was an examining trial, and also a *habeas corpus* hearing. After these preliminary hearings, but before the trial resulting in this conviction appellant married Lena Cheesborough. Neither she nor appellant testified on the main trial.

Several matters are brought forward for review, and only by grouping them can the full force of the objections urged be properly understood. The following facts are presented by the various bills of exception.

*First*: It was shown that just a few days before the killing appellant was at the home of Lena Cheesborough; that he was at her home on Sunday, Monday, Tuesday and Wednesday before the killing. Exception was reserved to proof of the foregoing facts because it was not shown that the killing occurred in the presence of Lena Cheesborough. She lived one and one-half miles from the killing and was not shown to have been connected therewith.

*Second*: The district attorney testified "that he was present as district attorney at the examining trial of appellant in which he was charged with killing Elnora Bell and was present at the *habeas corpus* proceedings. That in each of these proceedings the witness Lena Cheesborough testified against appellant; that she testified on each trial as a State witness and put on by the State, and that he had her written testimony." Exception was reserved to this evidence on the ground that Lena Cheesborough was at the time of the trial appellant's wife; that she could not testify personally against him, and that the testimony of the district attorney made the wife a witness

against him that the testimony of the district attorney was in effect getting before the jury indirectly that the wife of appellant had testified to some facts in the examining trial and *habeas corpus* proceedings detrimental to him. The trial judge qualified the foregoing bill by stating that he sustained the objection to that part of the testimony that "she testified against the defendant," and instructed the jury not to consider the same.

*Third*: Proof was made by the witness Jeolla Fleming that after appellant was released upon bond she had a conversation with him relative to his marriage with Lena Cheesborough, in which he stated that he had married her in order to "kill her evidence," that her evidence would be "no good" if he married her. Exception was reserved to this testimony on the ground that appellant's reasons for marrying Lena Cheesborough were improper, in that she was at the time of the trial his wife, and the marriage not being illegal the reasons therefor could not be shown as a circumstance against him.

*Fourth*: During the argument the district attorney said: "Gentlemen of the jury: we have introduced evidence in this case showing that, Lena Cheesborough testified for the State in the examining trial of defendant and on a writ of *habeas corpus* when the defendant was seeking to get bond, and her testimony was 'against defendant' and she is now defendant's wife and she has not testified at all in this case." Exception was reserved to this argument because Lena Cheesborough at the time was appellant's wife, could not testify against him directly or indirectly, and because the remarks of the district attorney were calculated to influence the minds of the jury to the appellant's prejudice in that it was equivalent to saying that she had already testified to some facts at the former trials that were detrimental to appellant and were equivalent to having the jury take this as a circumstance against him, and make his wife a witness against him. The court instructed the jury orally to disregard that portion of the district attorney's remarks where he stated that Lena Cheesborough had testified "against the defendant."

*Fifth*: Arrie Martin had testified upon the trial that immediately after the pistol shot was fired he heard deceased say, "Oh! Alfonso, you shot me." This witness was closely cross-examined relative to the statement he claimed to have heard deceased make, and an affidavit from said witness was introduced in evidence to the effect that the statement heard by him was, "Oh! Fonza, I have shot myself." During the district attorney's argument he told the jury that the first statement testified to by witness was the same one made soon after the killing, and before this witness had been seen by the defendant and Mr. R. A. Motley, and after they had seen this witness and had sent him to Mr. Motley's man Friday to swear him to a subsequent statement, and "you gentlemen know that Mr. Motley and those witnesses over in Rusk County are trying to get this defendant out of this horrible assassination so that he can pay him the twelve

hundred dollars he owes him.  Mr. Motley furnished white and black
in that county and all the negroes are afraid of him and are afraid to
testify in any case against his interests.''  At this point appellant ex-
cepted to the remarks of the district attorney on the ground that they
were without testimony to support them and challenged his state-
ment, saying the record did not bear him out and that Mr. Motley was
not that kind of a man, in reply to which the district attorney further
said:  ''Mr. Motley told me last night in a conversation I had with
him that he had made Alfonso Cole marry Lena Cheesborough so
that her testimony could not be used against him in this trial.''  The
trial court verbally instructed the jury to disregard the remarks of
the district attorney with reference to what Mr. Motley had told him,
but appellant reserved exception thereto on the ground that the
argument was inflammatory as indicating that Mr. Motley had in-
duced the witness Arrie Martin to make a false affidavit and had used
undue influence to have appellant acquitted, and had made a state-
ment to the district attorney, which, if made, was not in evidence.

It is clear to our minds that the State could properly show what
relations had existed between appellant and the Cheesborough woman
prior to the association between him and deceased; also to show that
immediately preceding the killing his attentions towards the Chees-
borough woman had been renewed, and that since the killing he had
married her.  It being a case of circumstantial evidence, all legiti-
mate explorations disclosing motive could be gone into by the State.
This testimony in our opinion was proper to go to the jury as ex-
plaining a probable desire on appellant's part to remove deceased
as an impediment to the reestablishment of himself in the favor of
his former paramour.  We are further of opinion the State was with-
in legitimate bounds in proving that appellant had told a witness he
married Lena Cheesborough to ''kill her evidence.''  He has asserted
the death of deceased to be the result of an accident.  This was his
defense.  Any statement made by him, properly provable, which
tended to refute his explanation of the killing was admissible.  His
statement to the witness bore the interpretation that the Chees-
borough woman knew facts contrary to his defense, and the statement
coming from him could be shown by the State.

When we approach the discussion of the other questions difficul-
ties immediately confront us.  When in the proper and legal develop-
ment of the evidence it appears that the wife of accused was in a
position to know facts, which if true, would be to his interest, he may
be properly criticised for not calling her as a witness.  (See Eads v.
State, 74 Texas Crim. Rep., 628, 76 Texas Crim. Rep., 647, 170 S. W.
Rep., 145, and many cases therein cited; also, Section 372, page 208,
Branch's Ann. P. C.)  Such is not the condition in the instant case.
Appellant's wife at the time of the trial (formerly Lena Chees-
borough) is not shown to have been present at the place of the killing.

It would be a fair inference that if she knew anything against his interest it must have been from some statement made to her by him.

Being his wife at the time of trial she could not be called to testify to those facts although he may have married her for the express purpose of closing her mouth. This court practically so announced in Miller v. State, 37 Texas Crim. Rep., 575. She being his wife, and the facts not showing her presence at the time of the homicide, could the State show either directly or indirectly that she had prior to the marriage testified to facts against him? We cannot escape the conclusion from the record before us that this was the effect of what occurred. The district attorney testified that on two former occasions (the examining and *habeas corpus* trials) she had been used by the State as a witness against him, and that he, the district attorney, had her testimony. The trial judge explains that he sustained objection to that part of the statement that she was "used against appellant." We are inclined to the view that even if this was done, the hurt was not remedied. The jurors are presumed to be men of average intelligence, and when they were informed that on two former occasions the State had used the then wife as a witness, and had her testimony, the only conclusion sensible men could draw therefrom was that the State would not have used her as a witness unless it was to the State's benefit to have done so, and therefore was inimical to appellant. The district attorney followed the evidence given by him, and told the jury in argument that Lena Cheesborough had testified for the State on the two occasions mentioned, and that her testimony was "against the defendant." The trial judge again told the jury to disregard the argument that the testimony was "against the defendant." Later on in the argument the district attorney stated that Mr. Motley had told him that he (Motley) made appellant marry Lena Cheesborough so that her testimony could not be used "against him in this trial." There was no basis in the evidence for the argument as to what Motley had told him. As was said in Stanchel v. State, 89 Texas Crim. Rep., 358, 231 S. W. Rep., 120, "here counsel passed from the domain of argument and conclusion, and entered the realm in which a witness only is entitled to move." The court immediately and properly instructed the jury verbally not to consider what the district attorney stated Mr. Motley had told him. Usually we are inclined to and do hold that prompt action of this kind of the trial judge will cure such error, but we are of opinion it could not do so in this instance. Appellant's attorneys had been laboring consistently to prevent any proof that his wife had been used as a witness by the State on former hearings. In his zeal the district attorney both in his evidence and argument persisted in getting before the jury the fact, not only that she testified, but also that it was "against" appellant. The case properly developed failing to show the wife in such position as to know any fact relative to the

killing, the State proved independently that she was a witness to facts against appellant, and then sought advantage by commenting on her failure to testify upon this trial. In this we believe the State went further than the law permits. The effect of it was to indirectly make her a witness against her husband. The principle controlling us in determining the matter was considered in Lankford v. State, 87 Texas Crim. Rep., 435, 222 S. W. Rep., 567, and in Dunn v. State, 85 Texas Crim. Rep., 299, 212 S. W. Rep., 511, and is in accord with the views now expressed.

The argument of the district attorney intimating that the witness Motley had been instrumental in procuring an affidavit from Arrie Martin contradictory of evidence given at the trial, and that the negroes were afraid of Motley, and afraid to testify against his interest, seems to find no support in the evidence, and should not have been indulged in.

Witnesses were permitted to testify to certain conduct of appellant towards deceased three or four years before her death, which was objected to as too remote. It occurs to us the objection goes to the weight of the evidence, rather than to its admissibility.

For the errors pointed out, the judgment must be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

ON REHEARING.

October 11, 1922.

LATTIMORE, JUDGE.—Only a formal motion for rehearing by the State was made after a reversal of this case during the latter part of the last term of this court. Said motion calls attention to no part of our opinion which is deemed contrary to the law, and advances no reason and cites no authorities why said motion should be granted. Same is, therefore, overruled.

*Overruled.*