### Tommie Adams v. The State.

No. 7745.     Decided June 6, 1923.

#### 1.—Bigamy—Proof of Marriage.

Where both marriages were proved by oral testimony and were admitted by the defendant, the irregularities in admitting the marriage certificate are unimportant.

**2.—Same—Evidence—Husband and Wife—Cross-Examination.**

Where, upon trial of bigamy, the district attorney, upon cross-examination of the defendant, was permitted to exhibit in close proximity to the jury certain writings purporting to be letters written by defendant to his first wife, and to elicit from him damaging statements made in the letters, inconsistent with the defense, which was interposed, the same was reversible error. Following Cole v. State, 243 S. W. Rep., 1103, and other cases.

Appeal from the District Court of Haskell. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of bigamy; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Ratliff & Ratliff* for appellant.—Cited, Kirkland v. State, 218 S. W. Rep., 367, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, and *Jas. P. Kinnard,* for the State.

MORROW, PRESIDING JUDGE.—The offense is bigamy; punishment fixed at confinement in the penitentiary for a period of five years.

In August, 1916, appellant was married to Lillie Rosson. Afterwards, in September, 1921, he was married to Bertha Martin. Both marriages were proved by oral testimony and were admitted by the appellant. The irregularities, therefore, in admitting the marriage certificate are unimportant.

In one of his bills of exception appellant complains that the district attorney, upon cross-examination of appellant, was permitted to exhibit in close proximity to the jury certain writings *purporting to be letters written by appellant to his first wife, Lillie Adams,* and to elicit from him, in substance, this testimony: that he resided at Crockett in the year 1922; that he had no recollection of having written to either his first or to his second wife during the first six months of that year; that he did not remember having written them both from any place; that he did remember having written the woman whom he had last married but not the first. He said:

"I am not positive whether I can identify the handwriting on that or not; I can't say positively whether it is my handwriting or not. \*\*\* I don't remember anything about writing the letter which you hand me."

He said further:

"If I wrote Lillie Adams to the effect that the reason I got in with this woman, I had been led off by a bad woman and I was coming back to her and get loose from this one, I don't remember it. \*\*\* If I wrote her that at the time I married Bertha Adams I was drunk when I married her, I don't remember no such words."

He said that he did not remember having sworn at the examining trial that he was drunk or intoxicated when he married Bertha Adams.

The objection made to this testimony is that it was an attempt to get before the jury the instruments in writing which were inadmissible and prejudicial, and further, that the district attorney had no right to exhibit before the jury as a basis for cross-examination, written instruments not admissible in evidence, because it was an attempt in an indirect way to get before the jury a communication from the defendant to his wife, which was a *privileged communication*. In qualifying the bill, the court said:

"With the qualification that the writing complained of was not close enough to the jury at any time for the jury to read, it and the court knows nothing of the contents of the instrument complained of, and there was no cross-examination after the defendant had testified on direct (examination) that he married the second woman because he thought he was divorced from the first and the court does not know that the writings mentioned purported to be letters from defendant to his first wife."

At Common Law, with certain exceptions not embraced in the instant case, a communication between the husband and wife made during the existence of the marriage relations, cannot, over the objection of either while on trial, be proved in evidence. Wigmore on Evidence, Vol. 1, sec. 397. By statute in this State, it is declared that neither the husband nor the wife shall in either case testify to communications made by one to the other while married. Code of Crim. Proc., Art. 794. In Hearne's case, 97 S. W. Rep. 1050, on a charge of bigamy, there were introduced against the accused letters written by him to his wife. Concerning this the court said:

"We hold that these letters were inadmissible. Letters of the wife to the husband, or husband to the wife, are not admissible evidence in a prosecution for bigamy."

This rule was reaffirmed in the case of Gross v. State, 61 Texas Crim. Rep., 176, 135 S. W. Rep. 373, and on page 377, there are numerous authorities collated which sustain it.

Does the bill of exceptions show that this rule was transgressed to the prejudice of the appellant in the instant case? It is said in the bill that while appellant was being cross-examined, the "district attorney exhibited in close proximity to the jury certain instruments in writing purporting to be letters written by defendant to his first wife, Lillie Adams, after his second marriage to Bertha Martin." From the qualification, it appears that these letters were not read to nor by the jury, and that the trial judge did not know what they contained. According to the bill, *the letter in question purported to be one written by the appellant to his wife during the continuance of the marriage relations.* Though the jury did not read it, they saw it

and heard the questions propounded by the State's attorney, and the responses made thereto by the appellant. We are unable to escape the conclusion, that by the procedure, the jury must have understood that the letter which the district attorney had in his hand purported to have been addressed by appellant to his wife purported to bear his signature, though he declined to admit it to be his. The matter was pressed to the point of asking if in the letter he did not say, in effect, that the reason he married his second wife was that she was a bad woman and he was drunk, and that he intended to release himself from her and re-establish his relations with his wife. Under the law, the fact that he wrote a letter to his wife was not admissible; its contents was not admissible. The inquiry touching either should not have been made, and the objection to the question should have been sustained. The trial judge did not know the contents of the letters He knew, however, as we understand the record, that they purported to be letters written by the appellant to his wife, and that the prosecuting attorney was endeavoring by indirect means to convey to the jury knowledge of the fact that the letters were written by the appellant and that they contained damaging statements inconsistent with the defense which was interposed and which the court submitted to the jury. This forbidden testimony was not less harmful nor less illegal because it went before the jury by indirect means. This has been held on many occasions, notably in Cole v. State, 92 Texas Crim. Rep., 368, 243 S. W. Rep. 1103; Lankford v. State, 87 Texas Crim. Rep. 435; Dunn v. State, 85 Texas Crim. Rep. 299. Other cases supporting the principle are cited in the case last mentioned.

There was testimony before the jury tending to support appellant's theory that at the time he married Bertha Martin he was acting under a mistake of fact in that he believed that his first wife, Lillie Adams, had obtained a divorce. This, if true and not the result of want of proper care, constituted a defense. Penal Code, Art. 47; Welch v. State, 46 Texas Crim. Rep. 530; Medrano v. State, 32 Texas Crim. Rep. 214.

This was recognized by the learned trial judge, and the questions of fact were submitted to the jury, both as to the mistake and the want of proper care. In deciding them, the evidence that the appellant had been in correspondence with his first wife after the marriage to his second wife and had made to her excuses inconsistent with his claim of mistake, was destructive of the defense urged. At least, it was calculated to so impress the jury. In deciding the issue, this element should not have been before them.

In permitting the questions and answers, we are constrained to the view that the learned trial judge was in error, because of which the judgment of conviction should be reversed, and it is so ordered.

*Reversed and remanded.*